M. T. BOSWELL *v.* R. T. THIGPEN, ADMR.

1. PLEDGE. *Promissory note. Sale by pledgee.*

    A pledgee of a promissory note, held as collateral security for a debt, has no right to sell the same unless specially authorized to do so; and a purchaser, with notice of the pledge, is a trustee *in invitum*, and can be made to account in equity for all that he collects on the note in excess of the indebtedness of the pledgor.

2. ADMINISTRATOR. *Pleadings. Date of intestate's death.*

    A bill in equity, filed by an administrator, is not demurrable because it fails to aver the date of his intestate's death.

FROM the chancery court of Attala county.

HON. A. M. BYRD, Chancellor.

The appellee, administrator of Mrs. S. J. Roby, filed his bill
in equity against the appellant, Boswell, and therein averred
that in 1888 his intestate executed a deed of trust on a certain
tract of land in favor of Boswell; that in 1891 she sold and con-
veyed this land to Mrs. S. A. Jenkins for $1,000, evidenced
by two promissory notes, maturing respectively in 1892 and
1893; that at the same time one W. J. Roby sold and conveyed
to Mrs. Jenkins a small tract of land for $200, and took her
promissory note therefor, which he indorsed and delivered to
Mrs. S. J. Roby; that in 1891 Mrs. S. J. Roby deposited all
three of these notes, aggregating $1,200 with Kelly & Mills, of
Kosciusko, as collateral security for a debt she owed them of
$178.50; that on November 20, 1893, Kelly & Mills, against
the wishes and over the protest of Mrs. Roby, sold the pledged
notes, at a large discount, to Boswell, who received payment of
the same from Mrs Jenkins; that Boswell knew at the time he
bought them that the notes were merely deposited with Kelly
& Mills as collateral security for said indebtedness of Mrs. Roby
to them; that on Mrs. Roby's indebtedness of $516 to Boswell,
secured by her deed of trust on the land subsequently conveyed
to Mrs. Jenkins, sundry payments had been made, and that
after crediting Boswell with the aggregate amount of the balance
of this debt, and the debt due to Kelly & Mills, there remained
due, of principal and interest on the pledged notes, the sum of
$530, for which he refused to account, and for which com-
plainant prayed a decree.    The bill shows that appellee was
appointed administrator of Mrs. Roby's estate, at the November
term, 1896, of the chancery court of Leake county, which, by
law, began on the second Monday of that month and continued
six days.    Laws 1896, pp. 87, 88.

The defendant demurred to the bill of complaint, assigning
as grounds for demurrer, the following: (1) That the bill did
not state when Mrs. Roby died, nor whether testate or intestate;

(2) that the bill showed that Mrs. Roby, in 1891, delivered the notes she held against Mrs. Jenkins, to Kelly & Mills, as security for her indebtedness to them, and failed to show that the sale of the same to defendant was unlawful or fraudulent, or for any other purpose than that intended by the parties when the same were left as security with Kelly & Mills, as alleged in the bill; (3) that the bill failed to charge that Kelly & Mills did anything more than they had a legal right to do—that is, to sell the security for the payment of the debt; (4) that no right of action arose on the facts charged in the bill; (5) that the bill shows that defendant had the first lien or deed of trust on the lands sold by Mrs. Roby to Mrs. Jenkins, and could sell the same for his money, and had the first right in a court of equity for his money, either out of the lands or the proceeds of the sale made; (6) that the bill shows that the defendant received payment of the three notes named in the bill, on the twentieth of November, 1893, and that more than three years had elapsed since the right of action accrued, and that the claim in suit was therefore barred by limitation; (7) that the bill had no equity on its face; (8) that, admitting all that the bill charges as true, and that the defendant did collect all the money due on the Jenkins notes, in November, 1893, the defendant's remedy was full, adequate and complete at law; (9) that the court was without jurisdiction to collect the debt against defendant, when the same was due by simple contract, if at all, and while no liens are sought to be enforced, nor any facts shown calling for the aid of a court of equity, and no inquiry into mutual questions involved; (10) that the bill was otherwise vague and uncertain, and, on the facts, should be dismissed; (11) that the bill does not show that the debt due Kelly & Mills had ever been paid by complainants, so as to entitle them to the proceeds of the collaterals deposited to pay said debt. The demurrer was overruled by the court below, and the defendant prosecuted this appeal.

*Dodd & Armistead,* for appellant.

The second ground laid in the demurrer is as follows: "Because the bill shows that Mrs. S. J. Roby, in 1891, delivered the notes she held against Mrs. S. A. Jenkins to Kelly & Mills, as security for her debt due them, and fails to show or allege the sale of the same to M. T. Boswell was unlawful or fraudulent; or for any other purpose than that intended by the parties when the same was left as a security with Kelly & Mills, as alleged in the bill." We think just here the bill is fatally defective in not stating that there was no power of sale conferred by the assignor in depositing the collateral notes with Kelly & Mills as security; and that the sale of said. notes by them to Boswell was unlawful, and not within any agreement or consent of assignor, at the time they were so deposited as security. We insist that the primary purpose of the collateral security was, if Roby did not pay Kelly & Mills, the notes should be sold or otherwise collected to pay off the debt; the bill should negative the idea of a power of sale in Kelly & Mills when the collaterals were deposited with them, for otherwise the sale to Boswell would be valid, and if valid, the bill states no cause of action against defendant.

The third and fourth grounds are, in the main, and in substance and effect, contained in the second, above commented upon, while the fifth ground brings out the equity of the defendant in the funds sought to be reached by the bill.

We now invite the court's attention to the sixth ground of demurrer, to wit: "Because the bill, on its face, shows that the defendant, Boswell, received payment of the three notes named in the bill on the twentieth day of November, 1893, and that more than three years have elapsed since the right of action accrued, and that the claim in suit is barred by the statute of limitations and is now no valid claim against this defendant." The bill says: "Complainant further shows that on November 20, 1893, the date on which defendant received payment of the three notes given by Mrs. S. J. Roby, was then

justly due the defendant $178.50, for which the said notes were placed with Kelly & Mills,'' etc.   Now, the bill was not filed until January 21, 1897.   So more than three years elapsed before bringing this suit against this defendant, and it is therefore barred.   We think it clearly barred from inspection of the bill, nor can we see an answer to this proposition, which we earnestly insist upon.   We press upon the court that this is not an action of tort as against Boswell.   If any wrong was committed, it was done by Kelly & Mills, who sold the collaterals, and not by the party who collected them.   If the money collected from the collaterals, in the hands of the purchaser of them, overpaid his account, then an implied contract arose between the parties by operation of law, and the demand, in such case, would be barred in three years.   Section 2739, code 1892.

As before stated, there are many cases in which the sale of collateral security can be made so as to pass the legal title to the paper, and, as the bill does not negative this idea, the purchaser of such paper is entitled to protection as owner of same, and, if protected, and he made profits by reason of his purchase, that would not avail complainant.

Again, we submit by bringing this suit against Boswell, the complainant expressly affirmed the sale to Boswell, and waived the tort against Kelly & Mills, and must stand or fall on the limitations governing implied contracts.   *Isaacs* v. *Herman*, 49 Miss., 449.   And if this authority cited is the law, the same is conclusive of this case, and the claim is barred.   But there are other equally decisive reasons why the demurrer should have been sustained.   The seventh ground laid, is '' because the bill has no equity on its face.''   There is no equity jurisdiction on the facts stated in the bill, because no ''mutual accounts'' between the parties, which must exist to give the chancery court jurisdiction in a case like the one at bar.   See constitution of this state, sections 160, 161.   *Sykes* v. *Barnard*, 72 Miss., 297.

*Luckett & Sullivan*, for appellee.

There is no merit in any of the causes of the demurrer.

Second cause: That the bill fails to allege that sale of the notes was unlawful, etc., for any other purpose than that intended by the parties. When the doing of a thing is unlawful, you show that it was unlawfully done when you show it was done at all. The sale of this pledged property was, of itself, unlawful. The assumption in this cause of demurrer is, that a pledgee can sell the thing pledged whenever, however, to whomever, and for whatever he pleases, leaving the pledgor without any rights, either in law or equity. The pledgor is outlawed. Why? Because he was honest and reckless enough to secure the debt he owed. Under this rule, A, who holds B's note for $1,000, secured by collaterals worth ten times as much, could sell these collaterals for enough to pay the $1,000, and B would be the loser thereby. The law does not put one man at another's mercy, but protects both.

Third ground: "Because the bill fails to charge that Kelly & Mills did anything more than they had a legal right to do; that is, to sell the security for the payment of the debt."

"The general rule of law is that without an express agreement to the contrary, negotiable collaterals, as they have no market value, cannot be enforced by either public or private sale." Am. & Eng. Enc. L., vol. 18, p. 690; Edwards on Bailments, secs. 236, 293; Pomeroy Eq. Jur., vol. 3, sec. 1231.

We see from the foregoing authorities that a pledgee may have a right to sell certain personal property, a gun, a horse, or a stock of goods, at public sale, on giving notice, but that he cannot sell things in action at public or private sale. Now, just how it is that learned counsel, in their cause of demurrer, failed to distinguish between a cow and a note, "passeth understanding." It is true that the parties could have a special contract for the sale of the collaterals, but, as this is an exception to the rule of law, the defendant must allege this in his answer and prove it, if he relies upon it. The court can-

not and will not presume that people make contracts which change a rule of law, but must presume that the law governs and regulates the rights of the parties.

The fourth cause of demurrer will be discussed in conjunction with the other grounds as to want of equity jurisdiction.

The fifth cause: "That defendant had a trust deed and a right to enforce a lien in equity," etc. If having a remedy in a court of equity, or a right there, entitles a man to take the law in his own hands, and ignore the rights of others, then a court is a dangerous institution, and ought to be abolished.

As 'to the sixth cause of demurrer—that is, the statute of limitations of three years. This case is not governed by § 2739 of the annotated code of 1892, relied upon by counsel on the other side, because it is not a suit on an open account, nor one on an expressed or implied contract, as contemplated by that section. This suit is in the nature of one to declare a trust, and the defendant in a court of equity is regarded as a "trustee *ex maleficio*." There are three periods of limitation prescribed by the code of 1892 to bar actions personal, to wit, three, six and ten years. The statute of three years was pleaded to an action brought against the city of Jackson to recover money illegally covered as a privilege tax, but the supreme court held that it did not apply. *Musgrove* v. *City of Jackson*, 59 Miss., 390. Section 2737, code of 1892, provides that "all actions for which no other period of limitation is prescribed, shall be commenced within six years next after the cause of action, and not after." It seems to us that this section applies to our case, as we find no other period prescribed barring this class of actions. There is no semblance of a contract, express or implied, between the parties, and it is for this reason that a court of equity comes to the rescue and says to the defendant that, while you have wrongfully gotten possession of and collected the securities originally placed with Kelly & Mills, still you shall not be permitted to reap the fruits of your wrongful act, but you must account to the owner for what is justly and equitably hers.

We are not suing on the theory that there is a contract, expressed or implied, between these parties, but alone upon the theory that Boswell knew how the notes were held by Kelly & Mills, and that he purchased them with full knowledge, and in a court of equity and conscience is chargeable with what he received on them from Jenkins, and may be entitled to what he paid Kelly & Mills and what Mrs. Roby was owing him on the note and trust deed held by him on her at the time of her death. It is admitted by the demurrer that this difference in favor of this estate is several hundred dollars, and to permit Boswell to hold the money which honestly belongs to this estate, and refuse to account, would be an outrage upon justice, and what no court of conscience will allow.

At common law, statutes of limitation did not ordinarily run against express or implied trust, and as the statute is in derogation of the common law, it should receive a strict construction. Section 2733, code of 1892, provides "that if a person entitled to bring any of the personal actions hereinbefore mentioned, or liable to any such action, shall die before the expiration of the time herein limited therefor, such action may be commenced by or against the executor or administrator of the deceased person, after the expiration of said time, and within one year after the death of such person."

In the case of *Hill* v. *Nash*, 73 Miss., 849, Woods, Judge, uses this language: "But it has been decided that there is no such thing as a stale claim, properly so called, in this state, and, by positive law, the statute of limitations is to be applied in our courts of equity as in our courts of law. With us no claim is barred until the limitation of the statute has accrued."

The fourth, eighth, ninth, and tenth causes of demurrer we will notice together, as they raise the question of the jurisdiction of the chancery court over this class of cases. As heretofore said, we are not suing on the idea that there is a contract, expressed or implied, between the parties, but upon the theory that Boswell knew how the notes were held by Kelly & Mills,

and that he purchased them with full knowledge of their trust character, and, in a court of equity and conscience, is chargeable with what he received from Jenkins in the way of principal and interest, and is entitled to reimbursement for what he paid to Kelly & Mills, and the amount due him by Mrs. Roby on the note and trust deed as stated in our bill. The subject of trusts and trustees is a familiar doctrine of equity jurisprudence, and over them courts of equity have, from the time that the "memory of man runneth not to the contrary," exercised exclusive jurisdiction. How did Kelly & Mills hold these notes deposited by Mrs. Roby? Section 292, page 214, Edwards Bailments, second edition, reads thus: "The pledgee holds the property in his hands on a trust, and, where he proceeds to sell on notice, he is not allowed to become the purchaser, and if he does, the sale is a nullity, and the bailment continues unaffected." A slightly different rule has been held where a mortgagee purchases on a sale had in the foreclosure of a chattel mortgage. Admitting that the sale does not cut off the equity of redemption, it is upheld as valid in law in all collateral actions. And it appears that a purchase by a trustee, at a public sale, stands valid in law until some action is taken to set it aside, and it is voidable only at the election of the persons whose interest is affected by the purchase. Boswell was clearly a trustee *in invitum* in respect to the pledged notes, and accountable in equity for the balance thereon in excess of the debt due Kelly & Mills. Edwards on Bailments, sec. 212, 313, 314; 2 Story Eq. Jur., p. 373; Hill on Trustees, top p. 276; 3 Pom. Eq. Jur., p. 228; 1 *Ib.*, secs. 150, 151, 158, 155; *Calhoun* v. *Burnett*, 40 Miss., 599; 10 Am. & Eng. Enc. L., p. 60. There can be no doubt of the jurisdiction in equity. Story Eq. Jur., secs. 1257, 1265; *Lowry* v. *Houston*, 3 How. (Miss.), 394; *Glass* v. *Lobdell*, Walker (Miss.), 105; *Thompson* v. *Wheatley*, 5 Smed. & M., 499; *Dismukes* v. *Terry*, Walker (Miss.), 197; 2 Story. Eq. Jur., sec. 700, 792, 1269, 1270; 1 *Ib.*, secs. 28, 508, 513, 533; 1 Johnson Ch., 132; 3 Hum., 413; 20 Johns., 576.

TERRAL, J., delivered the opinion of the court.

The right of property in the thing pledged does not pass to the pledgee, but remains with the pledgor, subject to the lien of the pledgee. 2 Kent, 581. The pledgee's character is that of a trustee for the pledgor—first, to pay the debt, and, second, to pay over the surplus to the pledgor—and he cannot deal with the property so as to destroy, or even impair, its value. The pledgee cannot sell the subject of the pledge unless he is specially authorized so to do. His authority to deal with the pledge is determined by the law. In the case of promissory notes, and other negotiable instruments, he is *prima facie* bound to collect the full face value of them, with interest, unless under special circumstances of excuse, to be shown by him. He should use reasonable and ordinary diligence for their collection, and, when collected, he should reimburse himself to the extent of his lien upon them, and pay over the surplus to the pledgor. If the pledged notes be assigned by the pledgee to some third person, with notice of the pledge, such person can take no greater right in the pledge than his assignor had, and, upon the collection of the notes, must pay to the pledgor the surplus after satisfying the debt for which they were originally pledged. Neither the pledgee or his assignee can impose a greater burden on them than the satisfaction of the principal debt for which they were originally pledged, except by the consent of the pledgor. *Wheeler* v. *Newbould*, 16 N. Y., 392; *Fletcher* v. *Dickinson*, 7 Allen (S. C.), 23; *Nelson* v. *Wellington*, 5 Bosworth (N. Y.), 178; *Lamberton* v. *Windom*, 12 Minn., 232, 242.

It seems to us that the subject-matter of litigation is of equity cognizance. Kelly & Mills had no authority to discount the notes of Mrs. Roby. By so doing they committed a breach of trust and confidence, and Boswell, to whom the notes were sold at a sacrifice, participated in such wrong, and by so purchasing at a discount, he became a trustee *in invitum*. 2 Pom. Eq., sec. 1044. Mr. Story, in his Equity Jurisprudence,

sec. 1032, says that the assignment of the pledge gives the chancery court jurisdiction, and 3 Pom., sec. 1231, announces the same rule, and it applies with greater force, we think, where the assignment is effected by a wrongful sale of the pledge. It is unnecessary to consider 'the statute of limitations, as the suit cannot be barred, even under the three years' limitation. The defendant bought the notes and collected the money November 20, 1893, against the protest of Mrs. Roby, who, to protest, must have been in being, and we know by law that the November term, 1896, of the chancery court of Leake county, at which plaintiff's letters were granted, began on the ninth and ended on the fourteenth day of November, so that three years has not elapsed since the death of Mrs. Roby, and an administrator has one year after the grant of letters to bring suit. Nor do we think there is any uncertainty in the bill of complaint. It is not usual, nor is it necessary in suits by administrators, to state when the intestate died, and we see no reason for so doing. The bill, we think, calls for an answer; and when she died, and whether testate or intestate, if necessary to protect the defendant, can be raised by plea or answer. We find no question to be discussed upon the other grounds of the demurrer.

*The action of the chancellor is affirmed, at the costs of the appellant.*