RODGERS, Justice:
This is an appeal from a final decree of the Chancery Court of Prentiss County, Mississippi, sustaining a general demurrer to an amended bill in which the appellant, J. C. Horne, Jr., sought discovery, and an accounting against R. H. Burress and Milton Waters, and upon the failure of the appellant to plead over, his original bill was dismissed. The chancellor held that the chancery court did not have jurisdiction because appellant had an adequate remedy at law, namely: the right to sue at law for unlawful conversion of property. We are of the opinion that the chancery court did have jursidiction of the action as alleged in the original bill, and we reverse the judgment of the chancery court for the reasons hereinafter set out.
The appellant alleged in his amended bill that on or about February 1, 1957, he leased a building from the defendant, R. H. Burress, known as the Jeran Theater, which was located in Booneville, Mississippi. The appellant signed a lease contract in which he agreed to pay a monthly rental of $250,
Although it is not alleged in the complainant’s petition, the record showed that the lease contract was for a period of five *803 years, from January 1, 1957, and contained an option to renew for another five years on the same terms. The contract also provided that the fixtures were pledged to satisfy the terms of the contract.
The complainant further alleged in his petition that about the same time, he purchased from the former operators of the Jeran Theater all of the equipment and other accessories necessary in the operation of a theater. The purchase price of this equipment was $22,500, Complainant further alleged that he occupied the building and paid the monthly rental continuously until July 10, 1962. At that time, he closed the theater and paid the defendant Burress what he claims was the last and final payment of $250. About eight days later, on July 18, 1962, upon Burress’ demand, complainant surrendered the keys and sought to terminate the lease contract. At that time, Burress claimed an additional $500 rent because complainant’s trade fixtures had remained in the building a few days after he had closed it. The defendant did not pay the $500 which Burress claimed was owed, and Burress continued to hold the fixtures until all claimed past rent should be paid.
On June 27, 1964, Burress sold the Jeran Theater building to defendant Milton Waters. The building still contained the theater equipment which Burress had been holding since July 18, 1962, as a pledge for the claimed rent. After the purchase of the building, Waters operated the theater and used the equipment of the complainant without paj’ing him or offering any compensation.
Complainant alleged that he attempted to settle the matter. However, he claimed that defendant refused to discuss it with him, and that Burress claimed the rent had been accumulating month by month, and that the rent now amounted to several thousand dollars, but refused to state how many thousands.
Complainant said that his personal interest was the value of the property, $25,-000, less depreciation, less $3,000 which was still owed on the property, less whatever sum of money he might owe defendant Burress for unpaid rent.
Complainant finally alleged that he had no way of knowing how much rent defendant Burress was claiming, and what type arrangement was had between defendants, by which defendant Waters took possession of the theater machinery. This information was within the knowledge of the defendants. For this reason, complainant asked that they make a full discovery and render a complete accounting, concerning the dealing with his property. Although the complainant failed to allege that he had no adequate remedy at law, the facts set out in the bill show that he could not proceed against the defendants in a court of law without first tendering the pledgee the amount due; and he could not make a tender because he did not know how much was claimed to be due. Moreover, the owner of the machinery was entitled to be informed as to what had been paid to the pledgee for the use of the property. We are of the opinion that the complainant was entitled to maintain an action in the chancery court to obtain discovery from the defendants, and that an accounting should be had between the parties.
The textwriter, Jones on Collateral Securities section 557 (3d ed. 1912), has this to say at 665:
“A bill in equity may be maintained to redeem a pledge, if an account is wanted, or if there has been an assignment of the pledge, notwithstanding the pledgor has a remedy at law, in an action of trover. But if the ground be the necessity of an account, the account must be a real one; that is, there must be a series of transactions on both sides, and not merely one item on one side and a number of set-offs on the other.
*804 “If the pledge secures a money account of such a nature that the debtor would not be presumed to know the amount of his indebtedness, it is not essential that he should tender the amount before filing a bill to redeem. In fact, in such case, to obtain an accounting is one of the objects of the bill, and it is sufficient if the debtor proffers to pay whatever is found due on such accounting.”
We find the following statement set out in 72 C.J.S. Pledges § 42 p. 76 (1951):
“Under circumstances admitting equitable jurisdiction, the pledgor may maintain a suit in equity against the pledgee or a third person for the recovery of pledged property wrongfully withheld or other appropriate relief, or for its proceeds. Also, the pledgor may sue in equity to have the value of property converted by pledgee credited on the principal debt. On the other hand, the pledgee may bring a suit in equity to recover the property from the pledgor or from a third person who has wrongfully taken it from him, or to secure the proceeds of the property if it has been transferred by defendant. In equitable proceedings the rights of a pledgor as well as the rights of a pledgee must be tested by principles of equity.
“On a bill for discovery a decree may be entered against pledgee without sending plaintiff to law.”
See also 49 C.J. Pledges §§ 196-197 (1930).
It seems to be a universal rule that a pledgor may invoke the aid of equity to redeem property pledged and have an accounting as an incident to the right to redeem. See American Traders’ Nat. Bank v. Henderson, 222 Ala. 426, 133 So. 36 (1931); Crowson v. Cody, 209 Ala. 674, 96 So. 875 (1923); Hicks v. Dowdy, 202 Ala. 535, 81 So. 37 (1919); Nelson v. Owen, 113 Ala. 372, 21 So. 75 (1896); Pepper v. Beville, 100 Fla. 97, 129 So. 334 (1930); State ex rel. Reinhart v. Callahan, 48 Nev. 265, 229 P. 702 (1924); Ward v. Peoples’ Bank of East Orange, 91 N.J.Eq. 110, 108 A. 186 (N.J.1919); Smith v. Staten Island Land Co., 175 App.Div. 588, 162 N.Y.S. 681 (N.Y.1916).
This Court held in the case of Boswell v. Thigpen, 75 Miss. 308, 317, 22 So. 823 (1897) that “The right of property in the thing pledged does not pass to the pledgee, but remains in the pledgor, subject to the lien of the pledgee.” That case also held that the chancery court had jurisdiction “where the assignment is effected by a wrongful sale of the pledge.” 75 Miss. 318, 22 So. 824.
We think the original bill sets out a cause of action against the defendants. The pledgee does not become the owner of the pledged property when the pledgor fails to redeem the pledge. The pledgee’s right is simply to hold the goods for security. In order to work a forfeiture, a foreclosure of some kind must take place. Hudson v. Belzoni Equip. Co., 203 Miss. 212, 33 So.2d 796 (1948); Hibernia Bank & Tr. Co. v. Turner, 156 Miss. 842, 127 So. 291 (1930).
The final decree sustaining the general demurrer to the amended bill is hereby reversed, and the cause is remanded to the Chancery Court of Prentiss County, Mississippi, for further proceedings in accordance with this opinion.
Reversed and remanded.
GILLESPIE, P. J„ and JONES, BRADY and INZER, JJ., concur.