493 So.2d 971 (1986)
Chaula Faye MULLINS
v.
STATE of Mississippi.
No. 55808.
Supreme Court of Mississippi.
August 27, 1986.
Rehearing Denied September 17, 1986.
*972 Luther P. Crull, Jr., Winona, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by DeWitt Allred, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, C.J., and PRATHER and ROBERTSON, JJ.
PRATHER, Justice, for the Court:
Mrs. Chaula Faye Mullins was indicted for the murder of her husband, Elmer "Moon" Mullins. Pleading self-defense, Mrs. Mullins was convicted of manslaughter and sentenced to serve ten years in prison. We affirm.

I.
Elmer and Chaula Faye Mullins were married in 1973. Mr. Mullins was employed as a truck driver in Jackson, where he resided during the work week. The couple maintained a home in Kilmichael, Mississippi, where Mrs. Mullins resided. During the course of their marriage, Mrs. Mullins regularly traveled to Jackson to carry Mr. Mullins food and clean clothes. Many of her trips originated between 11:00 p.m. and 3:00 a.m., and she often was accompanied by one of her daughters. Mrs. Mullins always carried a gun for her protection.
The record indicates Mr. Mullins had a volatile personality and he experienced unexpected mood swings that resulted in violence. Witnesses testified Mr. Mullins' violent proclivities resulted in foul language, physical beatings, holding people at gunpoint, and threatening to kill the defendant and all her children.
After his retirement in 1982, Mr. Mullins moved to Kilmichael and resided with his wife, but his marriage continued to be stormy. For example, two weeks before his death, Mr. Mullins was arrested on simple assault charges filed by Mrs. Mullins. The charge stemmed from an alleged incident at a local grocery store where Mr. Mullins pulled his wife out of their car by her hair, threatening to stomp her into the ground until he killed her.
Monday, October 25, 1983, Mrs. Mullins drove to Memphis with her dog to visit one *973 of her daughters. Upon arriving, Mrs. Mullins requested her son-in-law procure a gun for their protection in case Mr. Mullins followed her to Memphis with harmful intentions. Her son-in-law borrowed a shotgun and put it in a closet next to the front door of the house.
The following Tuesday night, after her daughter's family had retired, Mrs. Mullins drove to Kilmichael. With her she carried her dog and the shotgun her son-in-law had borrowed.
According to her testimony, Mrs. Mullins arrived home that night at approximately 3:00 a.m. She knocked on the back door of her home until her husband answered. Yelling profanity and threatening to kill Mrs. Mullins, Mr. Mullins grabbed the defendant's hair and dragged her over to a picnic table where he made her sit while he returned to the house to get his shirt. To insure that his wife did not drive away, Mr. Mullins warned her that if she left, he would kill all her children.
Mrs. Mullins testified that before Mr. Mullins returned, she hid behind her car. From there she saw Mr. Mullins exit the back door of the house carrying a rifle. Noticing Mrs. Mullins was gone, Mr. Mullins yelled, "I am going to kill you. You son-of-a-bitch, I'll find you."
When Mr. Mullins returned to the house, according to Mrs. Mullins' testimony she got the shotgun out of her car and hid behind a nearby wood pile. Mr. Mullins again exited the house, this time wearing a red hunting light hat. The battery for the light was belted around his waist.
As the decedent began his search, Mrs. Mullins' dog ran over to where Mrs. Mullins was hiding. "I know where you are at you son-of-a-bitch, I will get you now," exclaimed Mr. Mullins.
Mrs. Mullins testified further that as her husband approached wielding a rifle, she tried to fire the shotgun unsuccessfully. She pumped it once and pulled the trigger again. The second time it fired, inflicting a blow to Mr. Mullins. Afterwards, Mrs. Mullins ran to her car, leaving behind one unfired shotgun shell and a spent shotgun shell. She drove back to Memphis, where she arrived before her daughter's family was awake.
Mr. Mullins' body was discovered later that morning by a garbage collector. An autopsy revealed that Mr. Mullins bled to death from a gunshot wound which entered his back and exited his chest.
Also during the morning of October 26, 1983, the sheriff of Montgomery County called Mrs. Mullins in Memphis to tell her of her husband's demise, but Mrs. Mullins did not mention the shooting. Not until November 3, 1983, did Mrs. Mullins admit killing her husband. On that date she gave a tape-recorded statement describing her shooting of the decedent.
Mrs. Mullins was indicted for murder and found guilty of manslaughter. From that conviction she perfects this appeal.

II.

Did the trial court err in excluding testimony concerning Elmer Mullins' general reputation for peace and violence in the trucking industry in Jackson, Mississippi?

A.

REPUTATION EVIDENCE
As previously mentioned, Elmer Mullins worked and resided in Jackson, Mississippi before his retirement, traveling to Kilmichael only during his time off from work.
During the trial of Mrs. Mullins, her attorney sought to elicit testimony from Dalton Wallace concerning Mr. Mullins' reputation in the trucking industry. Mr. Wallace previously testified that he had worked with Elmer Mullins for 25 years. The trial judge refused Mr. Wallace's reputation testimony, holding that reputation testimony must originate from the community in which a person lives.
The question before this Court is whether the term, "community" encompasses only the area in which a person resides.
In Barnes v. State, 249 So.2d 383 (Miss. 1971), this Court found the term "community" *974 was not susceptible to exact geographical definition and could extend to any society in which a person has a well-known or established reputation. Id. at 385, quoting 29 Am.Jur.2d Evidence § 347 (1967). The court further found that "community" could include "any considerable group with whom he constantly associated in his business, work, or other continued activity, and who might reasonably be thought to have a collective opinion about him." 249 So.2d at 386, quoting McCormick, McCormick on Evidence 335 (1954).
Therefore, the trial judge committed error when he ruled that opinion testimony could only originate from the community in which a person lives.

B.

HARMLESS ERROR
Despite the trial judge's misapplication of the applicable law, this Court holds the error in this case was harmless. As the state points out, there was already an abundance of evidence admitted addressed to Elmer Mullins' violent nature.
The testimony of Mr. Wallace concerning the bad reputation of the deceased would simply have been cumulative, and its exclusion was not prejudicial. Miss.Sup.Ct. Rule 11.

III.

Did the trial court err in granting manslaughter instructions?
The appellant argues that the evidence at trial did not warrant manslaughter instructions S-1, S-3, S-4, and S-6. Instruction S-1 described the term manslaughter. Instruction S-3 instructed the jury that in the event they failed to find that the state had proven the essential elements of the crime of murder, that the jury could then proceed with deliberations to consider the lesser crime of manslaughter. Instruction S-4 defined the essential elements of the crime of manslaughter. Instruction S-6 provided a form of the verdict in the event the jury found the defendant guilty of manslaughter.
"Heat of passion" manslaughter is described in Miss. Code Ann. § 97-3-35 (1972):[1]
The killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter.
"Heat of Passion" is defined as:
In criminal law, a state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.
Black's Law Dictionary, 650 (5th.Ed. 1979).
At trial, Mrs. Mullins testified that during the confrontation preceding the shooting of her husband, Mr. Mullins grabbed her by the hair and pulled her down to the ground and that he pulled her by the hair over to a picnic table. Mrs. Mullins testified further that once the deceased set her on the picnic table, he drew her head back, raised his fist to her face, and said, "You son-of-a-bitch, I'm going to beat you to death. I'm just going to kill your ass tonight." Id.
The testimony of Mrs. Mullins concerning the physical violence inflicted by the deceased gave rise to the manslaughter instruction. It was the province of the jury *975 to decide if the appellant actually killed in the heat of passion.

IV.

Did the court err in refusing the defendant's Weathersby rule instruction?
Instruction D-21 was the defendant's attempt to have the jury instructed on the Weathersby rule. Taken from Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933), the rules states:
It has been for some time the established rule in this state that where the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge.
165 Miss. at 209, 147 So. at 482.
The appellant was mistaken both procedurally and factually. "[W]hether an accused is entitled to the benefit of the Weathersby rule is a question for the court and is not a proper subject of an instruction to the jury." Null v. State, 311 So.2d 654, 658 (Miss. 1975). See also, Berry v. State, 455 So.2d 774, 776 (Miss. 1984); Sartain v. State, 311 So.2d 343, 344 (Miss. 1975).
In addition, the defendant is not entitled to Weathersby protection if her story is substantially contradicted in material particulars by "physical facts or by the facts of common knowledge." 165 Miss. at 209, 147 So. at 482. In the present case, the defendant armed herself with a loaded shotgun and traveled during the wee hours of the morning to her destination. After shooting her husband she fled back to Memphis and did not admit responsibility for the shooting until eight days later.
The deceased was found shot in the back. That "physical fact" is inconsistent with appellant's testimony that she shot her husband in self-defense as he was approaching her. Clingan v. State, 404 So.2d 1386 (Miss. 1981).
This Court holds the Weathersby rule was inapplicable in this case and that the trial judge committed no error in denying jury instruction D-21.

V.

Did the trial court improperly refuse jury instruction D-7?
Jury instruction D-7 reads:
The Court instructs the jury that one of the issues you are called upon to decide in this case is whether Elmer "Moon" Mullins was the aggressor at the time he was shot and killed by the defendant; and in so deciding you may consider the evidence, if any, of the bad reputation of the said Elmer "Moon" Mullins for peace and violence and all the evidence of any threats, if any, that the said Elmer "Moon" Mullins may have made against the defendant and all evidence, if any, of the nature and character of previous difficulties between Elmer "Moon" Mullins and defendant which were wantonly provoked by Elmer "Moon" Mullins.
In refusing instruction D-7, the trial judge stated,
The court believes that the Jury, of course, has heard the evidence as to the nature and character of previous difficulties and so forth, and the evidence surrounding the incident itself, and believes that other instructions already granted as to self-defense are sufficient to cover these points.
Every case appellant cites under this proposition concerns the admissibility of proof of prior difficulties between the defendant and the victim. In the case sub judice, the court did not prohibit evidence of prior threats made by the deceased, it simply refused to unduly emphasize those threats in its jury instructions. The jury was allowed to consider the evidence of prior threats along with the other evidence presented at trial.
In addition, the jury was properly instructed on the law of self-defense. *976 Therefore, this Court finds no reversible error in refusal of instruction D-7.

VI.

Did the trial court err in refusing to give jury instruction D-22?
Appellant's separate "form of the verdict" instruction was refused because it was repetitive of jury instruction S-6.
Appellant now argues the trial court placed undue influence on the forms of the verdict by listing the form of a "not guilty" verdict third in a list of three.
The often-repeated rule of law in Mississippi is that jury instructions must be read and considered as a whole in analyzing whether they should be granted or denied. Lee v. State, 469 So.2d 1225, 1232 (Miss. 1985); Jordan v. State, 464 So.2d 475, 479 (Miss. 1985); Roberts v. State, 458 So.2d 719, 721 (Miss. 1984). Furthermore, if the jury is fully and fairly instructed by other instructions, the refusal of a similar instruction is not reversible error. Billiot v. State, 454 So.2d 445, 461 (Miss. 1984); Barr v. State, 359 So.2d 334, 338 (Miss. 1978).
The record reflects that the jury was fully and fairly instructed concerning the forms of the verdicts from which they chose. Therefore, there was no reversible error.

VII.

Did the trial court err in refusing to set aside the jury verdict and order a new trial?
In Mississippi, a new trial will not be ordered unless the Court is "convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." Pearson v. State, 428 So.2d 1361, 1364 (Miss. 1983). See also, Winters v. State, 449 So.2d 766 (Miss. 1984); Rule 5.16(1) and (2), Uniform Criminal Rules of Circuit Court Practice.
The factual situation of this case is similar to that of May v. State, 460 So.2d 778, 781 (Miss. 1985) in which the defendant wife also pled the necessary self-defense of a battered wife. A discussion of the office of a motion for a new trial was enunciated in that opinion as follows:
The motion for a new trial is a different animal. While the motion for judgment of acquittal notwithstanding the verdict presents to the trial court a pure question of law, the motion for a new trial is addressed to the trial court's sound discretion. Neal v. State, 451 So.2d 743, 760 (Miss. 1984). When he moves for a new trial, a defendant in a criminal case necessarily invokes Rule 5.16 of our Uniform Criminal Rules of Circuit Court Practice which in pertinent part provides:
The court on written notice of the defendant may grant a new trial on any of the following grounds:
(1) if required in the interest of jutice;
(2) if the verdict is contrary to law or the weight of the evidence; ... .
As distinguished from the j.n.o.v. motion, here the defendant is not seeking final discharge. He is asking that the jury's guilty verdict be vacated on grounds related to the weight of the evidence, not its sufficiency, and may be retried consistent with the double jeopardy clause. Tibbs v. Florida, 457 U.S. 31, 39, 102 S.Ct. 2211, 2217, 72 L.Ed.2d 652, 659-60 (1982).
... .
A greater quantum of evidence favoring the State is necessary for the State to withstand a motion for a new trial, as distinguished from a motion for j.n.o.v. Under our established case law, the trial judge should set aside a jury's verdict only when, in the exercise of his sound discretion, he is convinced that the verdict is contrary to the substantial weight of the evidence. Pearson v. State, 428 So.2d at 1364.
As we said in Groseclose v. State, 440 So.2d 297 (Miss. 1983):
We will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence *977 that, to allow it to stand, would be to sanction an unconscionable injustice. [citation omitted] Any less stringent rule would denigrate the constitutional power and responsibility of the jury in our criminal justice system. 440 So.2d at 300.
As in the May case, this Court holds that the circuit judge's action in denying a new trial on this record was proper. The jury held the proof of the defendant and rejected her self-defense plea. This Court, as well as the trial court, finds no reason to disturb that finding, notwithstanding features of the sterotyped case of a battered wife.
Finding no reversible error, this Court affirms the conviction and ten year sentence.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] See also, Cook v. State, 467 So.2d 203, 207 (Miss. 1985) in which the Court described a second definition of manslaughter arising from Miss. Code Ann. § 97-3-35. In Cook, the Court quoted Williams v. State, 127 Miss. 851, 854, 90 So. 705, 706 (1921) which defined manslaughter as the "kill[ing of] the deceased without malice, under the bona fide belief, but without reasonable cause therefore, that it was necessary for him so to do in order to prevent the appellant from inflicting death or great bodily harm upon him."