567 So.2d 194 (1990)
Linda BUCHANAN
v.
STATE of Mississippi.
No. 07-KA-59642.
Supreme Court of Mississippi.
August 8, 1990.
*195 James P. Coleman, Coleman & Coleman, Joseph H. Loper, Jr., Ackerman, for appellant.
Mike C. Moore, Atty. Gen., Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and BLASS, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Linda Buchanan was indicted, tried and convicted in the Circuit Court of Winston County on a charge of manslaughter and was sentenced to twenty (20) years in custody of the Mississippi Department of Corrections. She has appealed to this Court and assigns two issues for review.

FACTS
The facts in support of the verdict reflect that on September 13, 1987, at approximately 1:00 a.m., appellant shot and killed her boyfriend, Norman Boykin, with a .22 pistol. The homicide occurred in the home of appellant's mother in Louisville, Mississippi, where appellant and Boykin were living. Appellant admits killing Boykin but claims she did so in self defense.
On the day before the homicide, Boykin asked appellant to go with him for a six pack of beer and became angry when she refused to do so. He called Kenny Eaves to take him to the store and Eaves, his girlfriend, Sherry Parker, and Boykin got the beer and returned to appellant's house where they sat in the car and drank it. Boykin persuaded appellant to go with them to LaToro's beer joint in Noxubee County where they stayed until 12:00 a.m. and then drove back to Louisville. Appellant said that she drank only two beers but that Boykin was drunk at the time they left the bar.
Appellant and Boykin argued on their way home and Boykin pushed his hands in appellant's face and pulled her hair. They arrived home at approximately 12:30 a.m. Kenny Eaves and Sherry Parker declined to spend the night at appellant's house. According to appellant, Boykin was in a real violent mood and she was afraid; she tried to get away from him but he grabbed her and pushed her in the door; Boykin backhanded her across the face and forehead; she tried to run for the front door and Boykin snatched her away by the hair of the head; and they wound up in the den; and she attempted to call Boykin's mother but Boykin hung up the telephone.
Appellant stated that Boykin started to disconnect the telephone, and said he was going to kill her. She testified at trial that she knew where her mother kept a pistol in the dresser drawer and when Boykin started to disconnect the telephone, she got the gun and fired the first shot wide at the door; that she stood up and shot him and that he was getting up and coming toward her when she fired the second shot which killed him.
After the shooting, appellant ran out of the house to a neighbor's home and called the police. Gary Neal, an emergency medical technician for the ambulance department of the Winston County Hospital, responded to the call from the Louisville Police Department and went to the scene. He saw appellant walking up the driveway, crying and carrying a .22 caliber pistol, which he took from her. Officer Tim Palmer, already at the scene, had examined the body and found no vital signs. Appellant was advised of her Miranda rights and she gave a statement which includes most of the facts herein recited.
Gary Neal testified that appellant's face was red from crying but there didn't appear to be any marks, lacerations or bruises on her face and that appellant told him that she did not need to go to the hospital. Also, she did not appear to be hysterical *196 and appeared to know what she was doing and saying. Officer Tim Palmer testified that appellant told him without being asked, "I shot him. I told him he wasn't going to beat me." Investigating Officer McCart stated that he did not notice any bruises, swelling or scratches on appellant but she complained of pain in her neck and chest. She was taken to the hospital emergency room at 4:15 a.m. and was discharged at 5:35 a.m. The hospital records indicate that she was diagnosed as having a laceration of one centimeter to the inner lip and a laceration and two bruises on the forehead.
Dr. James Neal, a pathologist at the University Medical Center, testified that he performed an autopsy on the body of Norman Boykin; that he found an entrance wound from a gunshot in Boykin's back; and that the bullet, traveling in a slightly downward direction, had entered in the back, passed through the chest on the right side into the heart and into the left chest wall. He testified that the bullet had perforated the lung and the heart and the cause of death was internal bleeding. The external examination of the body revealed abrasions, one on the right cheek, a cluster along the inside of the right forearm between the elbow and wrist, and on the front part of the lower left leg.

LAW

I.

THE LOWER COURT ERRED WHEN IT OVERRULED DEFENDANT'S MOTION FOR A DIRECTED VERDICT OF ACQUITTAL OFFERED AT THE CONCLUSION OF THE STATE'S PRESENTATION OF ITS CASE AND AGAIN AT THE CLOSE OF ALL THE PROOF, APPLYING THE WEATHERSBY RULE AND CONSIDERING THAT THE GUILTY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND THUS CONTRARY TO LAW.
Appellant contends that, under the facts of this case, the Weathersby Rule should have been applied and she should have been granted a directed verdict of not guilty. In the alternative, she claims that the verdict was against the overwhelming weight of the evidence and that she should have been granted a new trial.
On April 10, 1933, the Court decided Weathersby v. State, 165 Miss. 207, 147 So. 481, a homicide case. The defendant, Weathersby, and his wife were the only witnesses present at the homicide. Their testimony and the physical facts reflected that Weathersby acted in self defense. In the community in which he lived his reputation for peace and violence was bad. A few moments prior to the killing, the deceased had been to the home of Weathersby and had threatened Weathersby and his wife with death. When he again approached the Weathersby home with a pistol, the victim was particularly abusive to Mrs. Weathersby, he renewed threats against the Weathersbys and had approached to within a few feet of the residence when Weathersby shot him. The Court held that the evidence did not support the verdict of guilty and that the State failed in its proof. The judgment of conviction was reversed and Weathersby was discharged. The Court stated:
[W]here the defendant or the defendant's witnesses are the only eyewitness to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge.
Weathersby v. State, 165 Miss. 207, 209, 147 So. 481, 482 (1933).
The decision and language above has since been referred to as the Weathersby Rule. However, the law was not new. Five cases cited in Weathersby had been decided previously and the legal principle was expressed in them. Defendants have often cited and argued application of the Weathersby Rule, but seldom have they prevailed. Usually, a factual issue is presented which requires submission of the case to the jury. In Wetz v. State, 503 *197 So.2d 803 (Miss. 1987), this Court expressed the other side of the Rule:
Where the physical facts and circumstances in evidence materially contradict the defendant's version of what happened, the Circuit Court is not required to direct a verdict under Weathersby. Rather, the matter then becomes a question for the jury. [citations omitted]
Wetz v. State, 503 So.2d 803, 809 (Miss. 1987).
In the case at bar, appellant stated, at the time of the homicide, and testified on trial, that the victim was facing her and coming toward her at the time she fired the fatal shot. The testimony of the pathologist showing that the victim was shot in the back substantially contradicts the testimony of the appellant and her self-defense theory. The victim was not armed. The medical reports did not show serious injury to Buchanan. At trial, she emphasized her fear of Boykin, while her earlier statement indicated a more purposeful, angry tone. There was no blood in the immediate vicinity of the telephone outlet where appellant said the victim was when she shot him. All the blood in the house was near the doorway between the den/bedroom and the living room located 5 or 6 feet from where appellant claims Boykin was when he was shot.
We are of the opinion that the verdict presented a guilt issue for the jury to determine and that the verdict is supported by the evidence. Likewise, the lower court did not abuse its discretion in declining to grant a new trial on the ground that the verdict was contrary to the overwhelming weight of the evidence. May v. State, 460 So.2d 778, 781 (Miss. 1984).
Issue number one is rejected.

II.

THE LOWER COURT ERRED WHEN IT GRANTED STATE'S JURY INSTRUCTIONS NOS. 1, 2, AND 3.
A discussion of the three instructions complained about in this issue follow:
S-1
If you unanimously find from all the evidence in this case beyond a reasonable doubt that:
1. the deceased, Norman I. Boykin, was a living person; and
2. the defendant on September 13, 1987, in Winston County, Mississippi, wilfully killed the said Norman I. Boykin by the use of a deadly weapon without malice aforethought; and
3. the killing of the deceased was without authority of law and done in the heat of passion and not in necessary self-defense,
then you shall find the defendant guilty of manslaughter.
Appellant's claim of vice in the instruction is contained in subparagraph three. That part of the instruction is based on Miss. Code Ann. § 97-3-35 (1972) which provides:
The killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter.
Appellant argues that there is no evidence in the record to support a conclusion that she acted in the heat of passion and claims that the only emotion shown was her fear induced by physical attack. In Mullins v. State, 493 So.2d 971 (Miss. 1986), a wife killed her husband and claimed she had done so in self defense. She contended that there was no evidentiary basis for a manslaughter instruction. The Court adopted the definition "heat of passion" as contained in Black's Law Dictionary, 650 (5th Ed. 1979):
In criminal law, a state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.
*198 Mullins, 493 So.2d at 974. In Mullins, the defendant testified that her husband grabbed her by the hair, pulled her down to the ground, pulled her by the hair over to a picnic table and threatened to beat her to death. The facts are similar to those of the case at bar.
S-2
If you unanimously find from all the evidence in this case beyond a reasonable doubt that:
1. the deceased, Norman I. Boykin, was a living person; and
2. the defendant on September 13, 1987, in Winston County, Mississippi, wilfully killed the said Norman I. Boykin by the use of a deadly weapon without malice aforethought; and
3. the killing of the deceased was without authority of law, not in necessary self-defense, but under the bona fide belief, without reasonable cause therefor, that it was necessary for her so to do in order to prevent the deceased from inflicting death or great bodily harm upon her,
then you shall find the defendant guilty of manslaughter.
Again, the appellant finds fault with subparagraph 3, wherein it was stated that the defendant was guilty of manslaughter if killing was "not in necessary self defense," but under the "bona fide" belief, without reasonable cause therefor, that it was necessary for her to kill in order to prevent the deceased from inflicting death or great bodily harm upon her. Regardless of how bona fide (in good faith) the belief of appellant was as to danger of great bodily harm to herself, the test is whether or not a reasonable person under the same or similar circumstances would have considered herself to be in such danger and would have thought there was reasonable cause to kill her lover for her own protection. The phrase "without reasonable cause therefor," following "bona fide belief" instructed the jury that, if it found that appellant acted in good faith but found that there was no reasonable cause for her belief, she was guilty of manslaughter. Cook v. State, 467 So.2d 203, 207-08 (Miss. 1985).
S-3
If you unanimously find from all the evidence in this case beyond a reasonable doubt that:
1. the deceased, Norman I. Boykin, was a living person; and
2. he died from an injury he received while attempting to cause or causing bodily injury to the defendant, Linda Buchanan; and
3. the defendant resisted any such acts of deceased by shooting him with a gun; and
4. the defendant's act of killing was unnecessary and not in necessary self-defense,
then you shall find the defendant guilty of manslaughter.
The appellant contends that subparagraph 4, using the word "unnecessary", constitutes error. Miss. Code Ann. § 97-3-31 (1972) provides:
Every person who shall unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or to do any unlawful act, or after such attempt shall have failed, shall be guilty of manslaughter.
In May v. State, 460 So.2d 778 (Miss. 1984), the following instruction was assigned as error:
The Court instructs the jury that every person who shall unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or to do any unlawful act, or after such attempt shall have failed, shall be guilty of manslaughter. The Court, therefore, instructs you that if you find from the evidence in this case beyond a reasonable doubt that the defendant, Navis Jane May, unnecessarily killed John D. May, either while she was then resisting an attempt by John D. May to commit any felony, or to do any unlawful act against her, or after such attempt to commit any felony or to do any unlawful act against her, to wit: to assault her; or that she unnecessarily killed John D. May after such attempt to assault her had failed; then you shall find the defendant, *199 Navis Jane May, guilty of manslaughter.
May v. State, 460 So.2d 778, 783-84 (Miss. 1984). [emphasis added] In holding that the evidence supported the instruction and that it did not constitute error, the Court said:
Here we emphasize that the weight of the evidence did indeed suggest that John D. May had on the day in question and repeatedly over the years been guilty of acts of violence toward Navis Jane May. More precisely, the evidence established that on the day in question John D. May had, within the meaning and contemplation of section 97-3-31, attempted to commit acts toward his wife which in law could constitute "any felony" or "any unlawful act."
In this context, the critical question is whether the actions of Navis Jane May in shooting and killing John D. May were necessary. The two instructions just quoted told the jury that, if they believed that the actions of Navis Jane May were not reasonably necessary, they should find her not guilty on grounds of self-defense. On the other hand, Instruction No. S-3 told the jury that, if they found the killing was unnecessary, they should find Navis Jane May guilty of manslaughter. We find that the instructions submitted fairly presented the issues to the jury. May's argument that there was no evidentiary support for Instruction No. S-3 is without merit.
Finally, May's argument that Instruction No. S-3 contains an erroneous statement of the law or is confusing or misleading is wholly without merit. The instruction tracks verbatim section 97-3-31 in all relevant particulars. It is no more difficult to read or misleading than the statute itself.
May v. State, 460 So.2d 778, 783-84 (Miss. 1984).
Decisions of this Court and the law require that all instructions shall be read and considered as a whole. In the case at bar, instruction C-1 told the jury:
You are not to single out one instruction alone as stating the law, but you must consider these instructions as a whole.
Instructions S-4 and D-1 must be considered along with instructions S-1, S-2, and S-3. They follow:
S-4
To make the killing of Norman I. Boykin justifiable on the grounds of self-defense, the danger to the defendant, Linda Buchanan, must have been either actual, present and urgent, or the defendant must have had reasonable grounds to apprehend a design on the part of the victim to kill her or to do her some great bodily harm, and in addition to this, she must have had reasonable grounds to apprehend that there was imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the grounds upon which the defendant acts.
D-1
The Court instructs the jury for Linda Buchanan that not every taking of human life is a violation of the law because some forms of homicide are excused by law.
In the case now being submitted for your decision Linda Buchanan cannot be convicted of manslaughter if at the time she had reasonable grounds to believe and did believe that she was in danger of death or serious bodily harm at the hands of the deceased.
You are further instructed that in this regard Linda Buchanan is entitled to the benefit of any and all reasonable doubt, either from the evidence or from the lack of evidence presented in this case.
The instruction S-4 correctly sets out the rule of law with reference to self defense requiring reasonable grounds for taking human life. Also, the instruction D-1 correctly states the law, if Buchanan had the required reasonable grounds, she could not be found guilty of manslaughter. The issue was for the jury to decide.
We are of the opinion that the evidence supported the verdict and that, reading all *200 the instructions and considering them together, there was no reversible error.[1]
The judgment of the lower court is affirmed.
CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED.
HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
NOTES
[1] Some prosecutors ask for too many instructions on the same question of law. The three instructions on manslaughter were inartfully drawn. One properly drawn instruction would have been much better. Why cause lawyers to argue the sufficiency of instructions and judges to ponder them when it is not necessary and can be avoided by requesting skillful and proper instructions?