997 So.2d 256 (2008)
Keith JOHNSON, Appellant
v.
STATE of Mississippi, Appellee.
No. 2007-KA-01687-COA.
Court of Appeals of Mississippi.
December 16, 2008.
*257 Sidney F. Beck, Jr., Olive Branch, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, Jackson, attorney for appellee.
Before LEE, P.J., CHANDLER and ISHEE, JJ.
CHANDLER, J., for the Court.
¶ 1. Keith Johnson was convicted of culpable-negligence manslaughter for the shooting death of Shane Johnston (Shane) *258 and sentenced by the Monroe County Circuit Court to fifteen years in the custody of the Mississippi Department of Corrections with eight years suspended, seven years to serve, and five years of post-release supervision. He appeals this conviction alleging the following errors: (1) the circuit court erred in failing to sustain the motions for a directed verdict at the close of the State's case-in-chief and at the conclusion of trial; (2) the circuit court erred in overruling the motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a motion for a new trial; and (3) the verdict of the jury was against the overwhelming weight of the evidence. Finding that none of these issues have merit, we affirm Johnson's conviction and sentence.

FACTS
¶ 2. On or about June 15, 2005, Johnson moved in with his cousin, Jerry Forrester in Amory, Mississippi. Also living at the Forrester residence were Jerry's two children, Patrick and Nicky. Patrick, age sixteen, had previously been living with his girlfriend, Tavia Wade (Tavia), age twenty-four, for over a year while Shane, Tavia's fiancé, was incarcerated. When Shane was released from prison, Tavia ended her relationship with Patrick and resumed her relationship with her fiancé. Late on the evening of June 24, 2005, Patrick began calling Tavia's home. Tavia's brother, Lance Schrock (Lance), and Patrick yelled at each other over the phone, and then, Shane and Patrick began yelling and cursing at each other over the phone.
¶ 3. There was conflicting testimony as to whether or not Patrick challenged Shane and Lance to come to the Forrester residence, about a quarter of a mile down the road, and fight. Either way, during the early morning hours of June 25, 2005, Lance, Shane, and Lance's friend, Alex Parker (Alex), all drove the distance to the Forrester home to confront Patrick. Before leaving, Shane told Tavia that he was going to speak with Patrick and Jerry about Patrick's incessant calling and insulting Tavia. Tavia attempted to change the mens' minds about going to the Forrester residence as they had "no trespassing" signs posted and a locked gate.
¶ 4. When Shane, Alex, and Lance arrived at the Forrester residence, Patrick and Johnson met them in the front yard. Shane came toward Patrick, but Johnson stepped between them and attempted to stop the fight. His attempt was unsuccessful, though, and Johnson and Shane began to fight. Shane hit Johnson in the mouth, which knocked his tooth loose. Johnson fled into the Forresters' bathroom to take care of his tooth. Meanwhile outside, the fight escalated.[1] Johnson heard the commotion. He grabbed a .22 caliber single-action revolver, loaded it, and came outside. He fired one shot into the air. Johnson told Shane, Lance, and Alex to leave. Alex and Lance left, but Shane refused. Johnson pointed the gun at Shane's head and again told him to leave. Johnson testified that when he raised the gun up again, it fired  even though his finger was barely on the trigger. He said that Shane was acting so crazy that he thought Shane would harm him or his family. He admitted that holding a cocked revolver to someone's head was an inherently dangerous act.
*259 ¶ 5. The jury was instructed on culpable-negligence manslaughter along with Johnson's defenses of self-defense and accident. The jury found him guilty, and he was sentenced to fifteen years, with eight years suspended, and seven years to serve in the custody of the Mississippi Department of Corrections, and five years of post-release supervision.

ANALYSIS
¶ 6. In order to establish that Johnson committed culpable-negligence manslaughter, the State had to prove beyond a reasonable doubt that his actions constituted "negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life, and this shall be so clearly evidenced as to place it beyond every reasonable doubt." Jones v. State, 678 So.2d 707, 710-11 (Miss.1996) (quoting Smith v. State, 197 Miss. 802, 818, 20 So.2d 701, 706 (1945)). "[C]ulpable negligence ... may be defined as the conscious and wanton or reckless disregard of the probabilities of fatal consequences to others as the result of the willful creation of an unreasonable risk." Id. (quoting Campbell v. State, 285 So.2d 891, 893 (Miss.1973)).
¶ 7. Johnson appeals his conviction for culpable-negligence manslaughter arguing that the circuit court erred in denying his motion for directed verdict and his motion for a JNOV, and that the verdict was against the overwhelming weight of the evidence. These three individual assignments of error are essentially challenges to the weight and sufficiency of the evidence. His challenges to the denial of his motions for directed verdict and his motion for a JNOV are both contentions that there was insufficient evidence. See Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss. 2005) (citing Carr v. State, 208 So.2d 886, 889 (Miss.1968)). "We consider the record at the last time the trial court had the issue before it here, on the motion for J.N.O.V." Foster v. State, 919 So.2d 12, 15(¶ 13) (Miss.2005). His third issue is challenging the weight of the evidence. We will, therefore, address the sufficiency of the evidence and, then, the weight of the evidence.

I. SUFFICIENCY OF THE EVIDENCE
¶ 8. A circuit court judge's decision to deny a defendant's motion for a directed verdict or for a JNOV will not be disturbed by this Court unless the facts and inferences "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty." Hughes v. State, 983 So.2d 270, 275-76(¶ 10) (Miss. 2008) (quoting Brown v. State, 965 So.2d 1023, 1030(¶ 25) (Miss.2007)). When reviewing
whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows `beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.'
Bush, 895 So.2d at 843(¶ 16) (citing Carr, 208 So.2d at 889).
¶ 9. A review of the sufficiency of the evidence does not require this Court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of *260 the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (internal citations omitted). If the facts and inferences presented at trial "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," this Court must reverse. Edwards v. State, 469 So.2d 68, 70 (Miss. 1985) (citing May v. State, 460 So.2d 778, 781 (Miss.1984)). But,
if a review of the evidence reveals that it is of such quality and weight that, `having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense,' the evidence will be deemed to have been sufficient.
Bush, 895 So.2d at 843(¶ 16) (quoting Edwards, 469 So.2d at 70).
¶ 10. Johnson claims that the State was unable to overcome his theory of self-defense.[2] When considering all the evidence presented in the light most favorable to the State, we find that there was sufficient evidence to convict Johnson of culpable-negligence manslaughter. There was also insufficient evidence on the basis of self-defense presented by Johnson to overcome the State's case. The jury was appropriately instructed on all pertinent aspects of self-defense. They were instructed that: (1) self-defense could only be used if it was reasonably necessary under the circumstances; (2) Johnson must have reasonably believed that he was in imminent danger of being killed or suffering great bodily harm; and (3) excessive force could not be used to repel the attack. The State presented testimony that sufficiently proved that none of the three requirements listed above were met.
¶ 11. Johnson retrieved the gun from the house, loaded it, cocked it, and shot one round into the air. He testified that he again cocked the gun, but when he went to raise it up again, the gun fired, even though his hand was barely on the trigger. He stated that he never meant to kill anyone; he just wanted everyone to leave. The State put on the testimony of Officer Curtis Knight who reported that Johnson had told him that the gun had been pointed about one to two feet from Shane's head. Officer Knight also explained to the jury that the type of gun involved in the shooting required someone to cock the pistol in order for it to fire. This conflicts with Johnson's testimony that the gun would not fire at one point and then misfired when he shot Shane. Alex also testified for the State, stating that he saw Johnson hold the gun to Shane's forehead while Shane's arms were down by his sides, and then Alex heard the gun fire. There were no other guns or weapons being used in the fight at the time of the shooting. In fact, Alex said that the entire confrontation was over at the point when Johnson held the gun to Shane's head.
¶ 12. Johnson stated that he thought his life was in imminent danger and that he shot the gun in self-defense. *261 But he admitted to having his finger on the trigger, cocking the gun, and pointing it at Shane. He also conceded that holding a cocked, loaded gun to another individual's forehead is an extremely dangerous and risky endeavor. "In Strode v. State, 406 So.2d 820, 822 (Miss.1981), [the supreme court] held that evidence that the defendant pointed a gun at the victim, pulled the trigger, and the gun fired resulting in the victim's death was sufficient to sustain a conviction of manslaughter by culpable negligence." Tait v. State, 669 So.2d 85, 89 (Miss.1996). "Even where a defendant claims the firing of a gun is accidental, pointing a loaded gun at an individual supports a conviction of manslaughter because the defendant's actions `show a conscious, wanton and reckless disregard of the likely fatal consequences of his willful act which created an unreasonable risk.'" Id. (citing Jernigan v. State, 305 So.2d 353, 354 (Miss.1974)).
¶ 13. The evidence that was presented at trial and all inferences which can be drawn from that evidence is sufficient, when taken in the light most favorable to the State, for a reasonable juror, exercising impartial judgment, to reach the conclusion that Johnson displayed a wanton disregard for human life when he pointed a loaded, cocked gun at Shane and pulled the trigger. It was also reasonable for the jury to conclude that Johnson did not prove his theory of self-defense in a way so as to justify Shane's death. Thus, it was not an abuse of discretion on the part of the circuit court judge to deny Johnson's motion for a JNOV. This issue is without merit.

II. WEIGHT OF THE EVIDENCE
¶ 14. This Court will only disturb a verdict when the denial of the motion for a new trial was an abuse of discretion. Miller v. State, 980 So.2d 927, 929(¶ 9) (Miss.2008). It will be considered an abuse of discretion when the verdict "is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Bush, 895 So.2d at 844(¶ 18) (citing Herring v. State, 691 So.2d 948, 957 (Miss. 1997)). It has been repeatedly held that on a motion for new trial, "the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." Id. (quoting Amiker v. Drugs for Less, Inc., 796 So.2d 942, 947(¶ 18) (Miss.2000)).
¶ 15. When reviewing the weight of the evidence, all "evidence should be weighed in the light most favorable to the verdict." Id. (citing Herring, 691 So.2d at 957). Reversing a verdict because it was against the overwhelming weight of the evidence "does not mean that acquittal was the only proper verdict." McQueen v. State, 423 So.2d 800, 803 (Miss.1982). It simply means that this Court "disagrees with the jury's resolution of the conflicting testimony." Id. "This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. Instead, the proper remedy is to grant a new trial." Bush, 895 So.2d at 844(¶ 18) (citing McQueen, 423 So.2d at 803).
¶ 16. After reviewing all of the evidence presented at trial in the light most favorable to the verdict, we cannot say that an unconscionable injustice resulted from the jury's determination of guilt. Looking at the same evidence reviewed for the sufficiency issue, we find that the State presented testimony and physical evidence that indicated Johnson was guilty of culpable-negligence manslaughter. He admitted on the stand that he knew his conduct was very dangerous. He admitted retrieving the gun, cocking it, firing it, cocking it *262 again, and then pointing it at Shane's head with his finger on the trigger.
¶ 17. It was not an abuse of the circuit court's discretion to deny the motion for a new trial. This issue is without merit.

CONCLUSION
¶ 18. For these reasons, we affirm Johnson's conviction and sentence.
¶ 19. THE JUDGMENT OF THE MONROE COUNTY CIRCUIT COURT OF CONVICTION OF CULPABLE-NEGLIGENCE MANSLAUGHTER AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH EIGHT YEARS SUSPENDED, SEVEN YEARS TO SERVE, AND FIVE YEARS OF POST-RELEASE SUPERVISION, AND PAYMENT OF A $1,000 FINE AND $100 TO THE MISSISSIPPI CRIME VICTIMS' COMPENSATION FUND IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] There is conflicting testimony as to what exactly was going on between the parties at this point. Alex testified that Patrick threw a pair of hedge clippers at Shane. Patrick testified that he wrestled a pair of bolt cutters out of Shane's hands when Shane charged at him. There was also testimony that Nicky, age 13, was involved in the fight. Alex testified that she punched him. Nicky testified that Alex kicked her.
[2] The Castle doctrine, which curtailed the duty to retreat and created a presumption that the defendant reasonably feared imminent death, great bodily harm, or the commission of a felony upon him from a person who has unlawfully and forcibly entered the immediate premises of a dwelling, was enacted effective July 1, 2006, approximately one year after the June 2005 crime. See Miss.Code Ann. § 97-3-15 (Rev.2006). Johnson was tried in September 2007. The Castle doctrine made substantive changes to the law of self-defense, and, as noted by the circuit court, its provisions did not apply retroactively to Johnson's case.