LEE, C.J.,
for the Court:
¶ 1. This appeal addresses James C. Newell’s second trial after the Mississippi Supreme Court in Newell v. State, 49 So.3d 66 (Miss.2010) (Newell I), reversed Newell’s first manslaughter conviction and remanded the case for a new trial.
FACTS AND PROCEDURAL HISTORY
¶ 2. On April 30, 2008, Newell married his wife, Diane. Within the next two *79 weeks, Newell suspected Diane of cheating on him with Tony Hayes, and had contacted a lawyer about divorcing her. On May 14, 2008, Diane moved out of their home in Vernon, Alabama. Later on that same day, around 5 p.m., Newell telephoned her and left two voice mail messages. In the first message, Newell threatened to “pop a cap” in Diane and Tony; however, in the second message, Newell told Diane that they “were not worth it.” Later that night, Newell went to the Slab House, a bar in Lowndes County, Mississippi, to see if Diane was there with Tony.
¶ 3. When Newell arrived at the Slab House around 9 p.m., he saw Adrian Boy-ette and Jason Hollis standing near Diane’s truck. Newell approached Boyette. Newell testified that he asked Boyette if he knew where the owner of the truck they were standing near was. Several law enforcement officers testified that Newell had told them that he asked Boyette if he was the person who had been answering Diane’s phone. The conversation between Boyette and Newell became heated. New-ell walked back to his truck, followed by Boyette. As Newell was getting into his truck, Boyette slammed the truck door on Newell’s leg. After Newell closed the truck door, Boyette began beating on the hood of the truck, threatening to “[mess him] up.” During this time Newell removed the handgun he carried from the glove box and placed it beside him on the seat. Boyette pulled on the driver-side door. Boyette threatened to “cut [Newell] up” and reached for his pocket. Newell grabbed the gun, pushed the door open, and shot Boyette. Newell jumped back in his track and drove off to his home in Vernon.
¶4. Police soon arrived at the Slab House and put out a “BOLO,” or be on the lookout, for Newell’s vehicle. Soon after Newell arrived home, his sister called 911 to report that Newell was outside his house threatening to commit suicide with a gun. Police-officers soon responded to the call. Investigator David Sullivan arrived to find Newell outside with a gun to his head, surrounded by other officers. Since Sullivan knew Newell personally, he sat on a bench next to Newell, talked with him, and convinced him to place the gun in his lap. During the conversation, Newell asked the police to check his truck for Boyette’s fingerprints and to obtain Diane’s cell phone to show that she had been talking to other men. After Sullivan ordered the track fingerprinted and the phone seized, he was able to convince Newell to give him the gun and surrender peacefully. At trial, Newell testified that he was threatening to kill himself because he did not think anyone would believe that he shot Boyette in self-defense.
¶ 5. After a three-day trial ending on August 24, 2012, the jury found Newell guilty. On September 7, 2012, Newell was sentenced to twenty years in the custody of the Mississippi Department of Corrections, with five years suspended and fifteen years to serve. Also, the court required Newell to serve five years of post-release supervision and to pay a $10,000 fine. Newell now appeals.
DISCUSSION
¶ 6. Newell is represented by the Indigent Appeals Division of the Office of the State Public Defender. On appeal, Newell’s counsel raised the following six issues: (1) the verdict was not supported by the weight and/or sufficiency of the evidence; (2) the trial court erred in giving several jury instructions; (3) the trial court erred in allowing Dr. Stephen Hayne to testify that Boyette was in a “guarded position” at the time of the shooting; (4) the trial court erred in allowing evidence of Newell’s telephone messages from Diane’s *80 phone; (5) the trial court erred in allowing the State to read Hollis’s testimony; and (6) the trial court erred in denying New-ell’s motion to dismiss for a violation of his constitutional right to a speedy trial. Additionally, Newell filed a pro se brief, asserting that his constitutional rights provided by the Fifth Amendment and the Due Process Clause were violated. We find -that the trial court erred in- allowing Dr. Hayne to testify to the position of Boyette’s body at the time of the shooting; therefore, we reverse and remand for a new trial.
¶ 7. Newell contends that the court erred in allowing Dr. Hayne to testify that the bullet wound was consistent with Boyette being in a guarded position.
¶8. “[T]he admission of expert testimony is within the sound discretion of the trial judge.” Miss. Transp. Comm’n v. McLemore, 863 So.2d 31, 34 (¶ 4) (Miss.2003) (citing Puckett v. State, 737 So.2d 322, 342 (¶ 57) (Miss.1999)). The trial judge’s discretion must comply with the Mississippi Rules of Evidence. Ross v. State, 954 So.2d 968, 996 (¶ 56) (Miss.2007). “Reversal is proper only where such discretion has been abused and a substantial right of a party has been affected. The trial court’s discretion must dlso [e]nsure the constitutional right of the accused to present a full defense in his or her case.” Id. (internal citations omitted).
¶ 9. Under Mississippi Rule of Evidence 702, (1) the expert’s testimony must be “based upon sufficient facts or data,” (2) it must be “the product of reliable principles and methods,” and (3) the witness must' have “applied the principles and methods reliably to the facts of the case.” The supreme court noted in Parvin v. State, 113 So.3d 1243, 1247 (¶ 14) (Miss.2013), that expert opinions
must rise above mere speculation. Indefinite expert opinions, or those expressed in' terms of mere possibilities, are not admissible. For example, we have held that an expert’s offering a reasonable hypothesis was insufficient, explaining that expert-testimony should be made of sterner stuff.
(Internal citations and quotations omitted).
¶ 10. At trial, the State questioned Dr. Hayne, asking:
Q: Okay. And Dr. Hayne, are you familiar with a person being in a guarded position and things of [that] nature?
A: Yes.
Q: Okay. And in terms of this particular position of the entrance and exit wounds, do you have an opinion with respect to that, sir?
A: It, certainly is consistent with it'.
Q: It would be consistent with the individual seeing a gun pointing at him and putting himself in a—
Newell’s counsel objected to the testimony lacking foundation and being speculative. The court overruled the objection, noting that the defense could bring it out on cross-examination.
¶ 11. Dr. Hayne then continued:
A: It would be consistent with that. It’s consistent with other things, too, but it’s. consistent with that.
Q: And would it also be consistent with an. individual having their hands raised, based upon the location of the entrance wound?
A: The left upper extremity could not be covering the entrance gunshot wound. It could be raised, it could be behind, it could be markedly forward.
¶ 12. -Prior to testifying about Boyette’s position at the time of the shooting, Dr. *81 Hayne offered no facts or evidence to sup* port his contention that Boyette’s singular gunshot wound was consistent with being in a guarded position. The State' argues that Hollis testified that he saw Boyette step back with his hands in the air. However, oh cross-examination, Hollis stated that the did not see Boyette prior to the shooting; he only looked after he heard the gunshot.
¶ 13. As the supreme court warned against in Parvin, 113 So.3d at 1247 (¶ 14), Dr. Hayne testified to a “mere possibility.” Dr. Hayne even noted that there were other possibilities as well, stating that Boy-ette’s arm could have been “raised, ... behind, ... or markedly forward.” Dr. Hayne’s testimony regarding Boyette’s “guarded position” does not rise above mere speculation,, to meet the requirements of Rule 702. Because a substantial right of Newell’s was affected, we reverse the conviction and remand the case for a new trial consistent with this opinion. We decline to address the merits of the other issues raised.
¶ 14. THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR A NEW TRIAL CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.
IRVING, P.J., BARNES, ISHEE, FAIR AND JAMES, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J.; ROBERTS AND MAXWELL, JJ., JOIN IN PART.