# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CT-00030-SCT

*JAMES C. NEWELL, JR. a/k/a JAMES C. NEWELL*
*a/k/a JAMES NEWELL a/k/a CHUCK NEWELL*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 09/07/2012 |
| TRIAL JUDGE: | HON. LEE SORRELS COLEMAN |
| TRIAL COURT ATTORNEYS: | WILLIAM PAUL STARKS, II |
| | RHONDA HAYES ELLIS |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY:  HUNTER NOLAN AIKENS |
| |      GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  BILLY L. GORE |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED.  THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR A NEW TRIAL - 10/08/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.     In 2008, James Newell was convicted of manslaughter for the shooting death of

Adrian Boyette at the Slab House bar in Lowndes County, Mississippi. After this Court

reversed Newell's conviction, he was retried and again convicted of manslaughter. The Court of Appeals reversed this conviction, finding that the trial court erred in its admission of certain expert testimony. We granted Newell's petition for writ of certiorari to address his remaining claims that the Court of Appeals declined to address. Finding those arguments to be without merit, we affirm the judgment of the Court of Appeals, reverse the judgment of the Lowndes County Circuit Court, and remand the case for a new trial.

## FACTS & PROCEDURAL HISTORY

¶2.    The instant appeal arises from Newell's second trial for killing Adrian Boyette. The facts of this case are well-documented by the Court of Appeals' opinion:

> On April 30, 2008, Newell married his wife, Diane. Within the next two weeks, Newell suspected Diane of cheating on him with Tony Hayes, and had contacted a lawyer about divorcing her. On May 14, 2008, Diane moved out of their home in Vernon, Alabama. Later on that same day, around 5 p.m., Newell telephoned her and left two voice mail messages. In the first message, Newell threatened to "pop a cap" in Diane and Tony; however, in the second message, Newell told Diane that they "were not worth it." Later that night, Newell went to the Slab House, a bar in Lowndes County, Mississippi, to see if Diane was there with Tony.

> When Newell arrived at the Slab House around 9 p.m., he saw Adrian Boyette and Jason Hollis standing near Diane's truck. Newell approached Boyette. Newell testified that he asked Boyette if he knew where the owner of the truck they were standing near was. Several law enforcement officers testified that Newell had told them that he asked Boyette if he was the person who had been answering Diane's phone. The conversation between Boyette and Newell became heated. Newell walked back to his truck, followed by Boyette. As Newell was getting into his truck, Boyette slammed the truck door on Newell's leg. After Newell closed the truck door, Boyette began beating on the hood of the truck, threatening to "[mess him] up." During this time Newell removed the handgun he carried from the glove box and placed it beside him on the seat. Boyette pulled on the driver-side door. Boyette threatened to "cut [Newell] up" and reached for his pocket. Newell grabbed the gun, pushed the

2

door open, and shot Boyette. Newell jumped back in his truck and drove off to his home in Vernon.

Police soon arrived at the Slab House and put out a "BOLO," or be on the lookout, for Newell's vehicle. Soon after Newell arrived home, his sister called 911 to report that Newell was outside his house threatening to commit suicide with a gun. Police officers soon responded to the call. Investigator David Sullivan arrived to find Newell outside with a gun to his head, surrounded by other officers. Since Sullivan knew Newell personally, he sat on a bench next to Newell, talked with him, and convinced him to place the gun in his lap. During the conversation, Newell asked the police to check his truck for Boyette's fingerprints and to obtain Diane's cell phone to show that she had been talking to other men. After Sullivan ordered the truck fingerprinted and the phone seized, he was able to convince Newell to give him the gun and surrender peacefully. At trial, Newell testified that he was threatening to kill himself because he did not think anyone would believe that he shot Boyette in self-defense.

*Newell v. State*, 2014 WL 4695871, at **1-2, 2013-KA-00030-COA, (Miss. Ct. App. Sept. 23, 2014). Newell was indicted for deliberate-design murder, but the jury at his first trial found him guilty of manslaughter. On appeal, this Court reversed Newell's conviction and remanded the case for a new trial, finding that the trial court had erred in excluding Boyette's toxicology results from evidence. *Newell v. State*, 49 So. 3d 66, 73 (Miss. 2010).

¶3. This Court issued its mandate for Newell's initial appeal on December 23, 2010. Newell was not retried until August 21, 2012. During this period, Jason Hollis, one of the State's witnesses at Newell's first trial, went missing. Accordingly, the State filed a motion to utilize a transcript of Hollis's prior testimony at Newell's second trial. This motion was granted over Newell's objection. At the conclusion of the second trial, Newell was found guilty of manslaughter.

3

¶4.    Newell appealed his conviction, and the case was assigned to the Court of Appeals. On appeal, Newell raised the following issues:

> (1) the verdict was not supported by the weight and/or sufficiency of the evidence; (2) the trial court erred in giving several jury instructions; (3) the trial court erred in allowing Dr. Stephen Hayne to testify that Boyette was in a "guarded position" at the time of the shooting; (4) the trial court erred in allowing evidence of Newell's telephone messages from Diane's phone; (5) the trial court erred in allowing the State to read Hollis's testimony; and (6) the trial court erred in denying Newell's motion to dismiss for a violation of his constitutional right to a speedy trial.

*Newell*, 2014 WL 4695871, at *2. The Court of Appeals reversed Newell's conviction and remanded the case for a new trial, finding that Dr. Hayne's testimony was inadmissible, but it did not address Newell's other assigned issues. *Id.* at **2-3. Newell then petitioned this Court for a writ of certiorari, arguing that the Court of Appeals had erred in failing to address his sufficiency-of-the-evidence and speedy-trial claims, because a ruling in his favor on either of these claims would preclude a new trial. He also argued that the Court of Appeals should have addressed his other evidentiary arguments, as those issues likely would come up again on remand. This Court granted Newell's petition to address these arguments.

## DISCUSSION

¶5.    Before addressing the merits of Newell's claims, we pause to explain our reasons for granting the petition for writ of certiorari in this case. On appeal, Newell challenged the sufficiency of the evidence supporting his conviction and claimed that his right to a speedy trial had been violated. Unlike an evidentiary error, which would result in a new trial, the resolution of either of the aforementioned issues in Newell's favor would have resulted in the dismissal of the charges against him. If the appellate court determines that the State

4

presented insufficient evidence of an element of the offense at trial, "the proper remedy is for the appellate court to reverse and render." **Bush v. State**, 895 So. 2d 836, 843 (Miss. 2005). "[T]he Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient[.]" **Burks v. United States**, 437 U.S. 1, 18, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978). In addition, "[t]he sole remedy for a speedy-trial violation is reversal of the trial court's decision and dismissal of the charges against the defendant." **Bateman v. State**, 125 So. 3d 616, 628 (Miss. 2013) (citations omitted). The Court of Appeals should have addressed Newell's arguments regarding the sufficiency of the evidence and his speedy-trial rights, even if it also determined that the trial court had committed an error in the admission or exclusion of evidence. And if those issues were decided in the State's favor, the Court of Appeals still should have addressed each of Newell's evidentiary arguments, as they are "likely to arise once again on remand." **Brooks v. State**, 763 So. 2d 859, 864 (Miss. 2000). We will address Newell's assignments of error in full.

I. **Whether the State presented sufficient evidence to secure a conviction.**

¶6.    On retrial, Newell was charged with manslaughter, and he relied on self-defense under the "Castle Doctrine" as his primary defense. On appeal, he argues that the State presented insufficient evidence to overcome his theory of self-defense and support a conviction for manslaughter. However, this Court has held that "[t]he issue of justifiable self-defense presents a question of the *weight and credibility of the evidence* rather than sufficiency and is to be decided by the jury." **Wade v. State**, 748 So. 2d 771, 774 (Miss. 1999) (quoting **Meshell v. State**, 506 So. 2d 989, 991-92 (Miss. 1987)) (emphasis added). Accordingly, we

5

must not disturb the jury's verdict unless we are "convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Gossett v. State*, 660 So. 2d 1285, 1294 (Miss. 1995). In our review of the evidence, we must be mindful that jurors are permitted to accept or reject the testimony of witnesses, and we "need not determine with exactitude which witness or what testimony the jury believed or disbelieved in arriving at its verdict. It is enough that the conflicting evidence presented a factual dispute for jury resolution." *Gandy v. State*, 373 So. 2d 1042, 1045 (Miss. 1975).

¶7.     Newell now presents a thorough argument concerning the statutory requirements for asserting the Castle Doctrine and alleges that "[t]he evidence in this case was such that no reasonable juror could find beyond a reasonable doubt that the circumstances in [Section 97-3-15(3)] were not met and that the presumption of reasonable fear did not apply." We find this argument to be without merit. This Court previously determined that Newell was entitled to a jury instruction on the Castle Doctrine, finding that "if [the jury] believed Newell's version of the events surrounding his altercation with Boyette, then it should presume that Newell used defensive force against Boyette because he 'reasonably feared imminent death or great bodily harm, or the commission of a felony upon him . . . or against the vehicle which he was occupying.'" *Newell*, 49 So. 3d at 78 (citing Miss. Code Ann. § 97-3-15(3) (Rev. 2006)). On retrial, the jury was presented with conflicting accounts of Newell's fatal altercation with Boyette and was given instructions on self-defense and the Castle Doctrine. It is clear from its verdict that the jury rejected Newell's self-defense theory and found the

6

State's account of the events to be more credible, as is its prerogative. *See Gandy*, 373 So. 2d at 1045. We do not find that allowing the jury's verdict to stand would sanction an "unconscionable injustice." *Gossett v. State*, 660 So. 2d at 1294.

II. **Whether Newell's constitutional right to a speedy trial was violated.**

¶8. This Court issued its mandate in Newell's first appeal on December 23, 2010. Newell was not retried until 607 days later, on August 23, 2012. During this period, Newell filed a demand for a speedy trial, and he later moved to dismiss his indictment for lack of a speedy trial. The trial court denied Newell's motion to dismiss. Newell now reasserts his argument that his constitutional right to a speedy trial was violated by the delay in his retrial.

¶9. The United States and Mississippi Constitutions guarantee criminal defendants the right to a speedy trial. U.S. Const. amend. VI; Miss. Const. art. 3, § 26 (1890). When considering an alleged violation of a defendant's right to a speedy trial, this Court applies the four-part test developed by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). *See Adams v. State*, 583 So. 2d 165, 167 (Miss. 1991). The relevant factors to be considered are: (1) the length of delay; (2) the reason for delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the defendant has been prejudiced by the delay. *Barker*, 407 U.S. at 530-33. None of these factors is a necessary or sufficient condition to the finding of a violation of the right to a speedy trial; they must be considered together with other relevant circumstances. *Id.* at 533. We address each of the *Barker* factors below.

A. **The Length of the Delay**

7

¶10. "[I]f a case is reversed on appeal for retrial, the time for retrial becomes a matter of discretion with the trial court to be measured by the constitutional standards of reasonableness and fairness under the constitutional right to a speedy trial[.]" ***Stevens v. State***, 808 So. 2d 908, 915 (Miss. 2002). "[T]he speedy trial clock begins to run for purposes of determining a violation of a defendant's right to speedy retrial on the date this Court reverses his first conviction." ***Duplantis v. State***, 708 So. 2d 1327, 1334 (Miss. 1998) (citing ***State v. Ferguson***, 576 So. 2d 1252, 1254 (Miss. 1991)). A delay of eight months or more is considered to be presumptively prejudicial and requires this Court to balance the remaining ***Barker*** factors. ***Bailey v. State***, 78 So. 3d 308, 321 (Miss. 2012) (citing ***Smith v. State***, 550 So. 2d 406, 408 (Miss. 1989)). The mandate in Newell's first appeal issued on December 23, 2010, but Newell was not retried until 607 days later, on August 21, 2012. As the trial court correctly found, this period is presumptively prejudicial and weighs against the State.

### B.    The Reason for the Delay

¶11. Under the second ***Barker*** prong, "the state must prove either that the defendant prompted the delay or that the state did, but with good cause." ***Ross v. State***, 605 So. 2d 17, 22 (Miss. 1992) (citing ***Wiley v. State***, 582 So. 2d 1008, 1012 (Miss. 1991)). For example, "'well-taken' motions for continuance may justify a delay in criminal cases." ***Ben v. State***, 95 So. 2d 1236, 1243 (Miss. 2012) (citing ***Flora v. State***, 925 So. 2d 797, 815 (Miss. 2006)). On the other hand, a bad motive on the prosecution's part significantly weighs against the State in the balancing test. ***Perry v. State***, 419 So. 2d 194, 199 (Miss. 1982). "Once the state

8

establishes that the reason for the delay justifies tolling the clock, the clock is tolled until the next reasonably available term of court." ***Ross***, 605 So. 2d at 22.

¶12.    As previously stated, this Court issued its mandate in Newell's first appeal on December 23, 2010, and Newell's retrial was set for February 22, 2011.  We find that the State's efforts to retry Newell within two months after this Court's reversal of his conviction were more than reasonable, so we do not weigh this initial period against the State.  "A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself." ***United States v. Ewell***, 383 U.S. 116, 120, 86 S. Ct. 773, 15 L. Ed. 2d 627 (1966)).

¶13.    On February 22, 2011, the initial retrial date, Newell requested a continuance because he had not yet obtained a copy of the transcript from his first trial.  The trial court granted Newell's motion and continued the trial to May 16, 2011.  This period also cannot count against the State.  We regularly have held that "[a] delay caused by the actions of the defendant, such as a continuance, tolls the running of the time period for that length of time, and this time is subtracted from the total amount of the delay." ***Wiley***, 582 So. 2d at 1011 (citing ***Flores v. State***, 572 So. 2d 1314, 1318 (Miss. 1990)).  The record here clearly indicates that Newell, not the State, requested this continuance.  To charge the State with this delay would punish the State for endeavoring to secure a speedy retrial while Newell was not prepared.

¶14.    On May 16, 2011, the State requested its first continuance, because the prosecuting attorney had a scheduling conflict with another case in another county.  The trial court

9

granted this request and continued the trial to August 16, 2011. "Continuances granted to the State where the State has demonstrated good cause, are not counted against the State." *Birkley v. State*, 750 So. 2d 1245, 1250 (Miss. 1999) (citing *Flores*, 574 So. 2d at 1318). A scheduling conflict is a legitimate reason for delay and does not constitute a "deliberate attempt to delay the trial in order to hamper the defense," which *Barker* strongly warns against. *See Barker*, 407 U.S. at 531. Moreover, Newell explicitly agreed to this continuance. The *Barker* Court recognized that the deprivation of the right to a speedy trial, unlike other constitutional rights, may work to the defendant's advantage. *Barker*, 407 U.S. at 521. Indeed, the Court found "the fact that Barker did not want a speedy trial" to be even more important than the absence of serious prejudice caused by the delay in that case. *Id.* at 534. Here, it would be illogical to count this delay against the State, when Newell actually agreed to the delay and made no indication that he wished to be tried in a more timely manner.

¶15. On August 16, 2011, the State alleges that it requested a second continuance because it was not prepared for trial. The trial court allegedly granted this request and continued the trial to November 1, 2011. No evidence in the record supports these assertions. Because the record is silent as to the reason for this delay, this period of delay must count against the State. *See Brengettcy v. State*, 794 So. 2d 987, 993 Miss. 2001) (citing *Beavers v. State*, 498 So. 2d 788, 791 (Miss. 1986)) ("[W]here the record is silent as to the cause of a delay, this factor must weigh in favor of the defendant.").

10

¶16. On November 1, 2011, Newell filed a motion to recuse the trial judge. This motion was granted two days later, and Newell's case was transferred to a new judge. The record does not reflect any new activity in the case between November 3, 2011, and February 27, 2012. We find that this period of delay is attributable to Newell's motion to recuse the trial judge, as some reasonable delay should be expected when a homicide case is transferred to a new judge who is unfamiliar with the case. "[I]f the defendant is the cause of the delay, he cannot complain thereafter." **DeLoach v. State**, 722 So. 2d 512, 517 (Miss. 1998). Thus, this delay does not weigh against the State.

¶17. On February 27, 2012, the trial court entered an order continuing the trial until May 29, 2012, because Newell had filed several[1] *pro se* motions requiring the court's attention. This delay clearly counts against Newell. **Wiley**, 582 So. 2d at 1011

¶18. On May 29, 2012, the State informed the trial court that two prosecution witnesses from Newell's first trial were unavailable to testify despite the State's best efforts to locate them. Thus, the State moved to admit the these witnesses' testimony through the transcript of the previous trial under Mississippi Rule of Evidence 804. Newell objected to the witnesses' absence and asked the trial court for a continuance so he could attempt to locate them or, alternatively, prepare his defense for their absence. Of particular concern to Newell was the unavailability of Jason Hollis, the only eyewitness to the shooting, who had testified for the State at the first trial. The trial court granted the State's motion to use the witnesses' prior testimony and Newell's request for a continuance, moving Newell's retrial to its final

---

[1] In fact, Newell filed a total of twenty-three *pro se* motions prior to his second trial.

11

date of August 21, 2012. This delay certainly cannot weigh against Newell, because Hollis's unavailability was out of his control and unknown to him. However, in holding that the unavailable witnesses' prior testimony was admissible, the trial court specifically found that the State had used all reasonable efforts to procure their attendance at trial. Moreover, Newell conceded in his brief before the Court of Appeals that "the State went to great lengths and used diligent efforts to locate Hollis or determine a current address at which Hollis could be served." The United States Supreme Court specifically held in **Barker** that "a valid reason, *such as a missing witness*, should serve to justify appropriate delay." **Barker**, 407 U.S. at 531. Thus, Hollis's unavailability as a witness constitutes good cause for the final delay in this case, as it gave the parties additional time to attempt to locate him and allowed Newell time to prepare for trial in his absence.

¶19. Based on the above analysis, the only delay truly attributable to the State is the unexplained seventy-seven-day delay between August 16, 2011, and November 1, 2011. Because this period is shorter than the presumptively prejudicial period of 270 days, this **Barker** factor does not weigh in Newell's favor.

### C.     The Defendant's Assertion of His Right

¶20. As for the third **Barker** factor, "[a]lthough it is the State's duty to insure that the defendant receives a speedy trial, a defendant has some responsibility to assert this right." **Taylor v. State**, 672 So. 2d 1246, 1261 (Miss. 1996). The **Barker** Court held that a defendant's demand for a speedy trial is entitled to "great evidentiary weight" and that "failure to assert the right will make it difficult for a defendant to prove that he was denied

12

a speedy trial." ***Barker***, 407 U.S. at 528."[A] demand for dismissal for violation of the right to speedy trial is not the equivalent of a demand for speedy trial." ***Perry v. State***, 637 So. 2d 871, 875 (Miss. 1994).

¶21.    Newell filed a demand for a speedy trial on September 2, 2011, approximately 253 days after the mandate issued in his initial appeal.  Because the record is clear that Newell asserted his right to a speedy trial, this factor must weigh in Newell's favor.  However, we take note of the fact that Newell waited almost eight months to assert this right. And after asserting his right to a speedy trial, Newell effectively undermined his request by seeking the recusal of the trial judge and thereafter filing numerous pretrial motions.  These actions belie the sincerity of his demand for a speedy trial.

### D.    Prejudice to the Defendant

¶22.    The ***Barker*** Court identified three considerations for determining whether a lengthy delay in a criminal trial has prejudiced the defendant: "(1) preventing 'oppressive pretrial incarceration;' (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired." ***Brengettcy v. State***, 794 So. 2d 987, 994 (Miss. 2001) (citing ***Barker***, 407 U.S. at 532).  Of these three considerations, impairment of the defense is the most serious, "because the inability of the defendant adequately to prepare his case skews the fairness of the entire system." ***Barker***, 407 U.S. at 532.  Newell relies solely on this last consideration to support his argument that his right to a speedy trial was violated.  He claims that the delay in his retrial resulted in Hollis's unavailability, which

13

prohibited him from cross-examining Hollis "with an eye toward negating manslaughter as a possible verdict."

¶23.    In support of this argument, Newell relies solely on the *Barker* Court's statement that "[i]f witnesses die or disappear during a delay, the prejudice is obvious." *Barker*, 407 U.S. at 532. This statement cannot be read in a vacuum, however, because *Barker* also recognizes that the unavailability of a witness due to delay may actually benefit the defendant. "As the time between the commission of the crime and trial lengthens, witnesses may become unavailable or their memories may fade. If the witnesses support the prosecution, its case will be weakened, sometimes seriously so." *Id.* at 521. Thus, prejudice must be analyzed within the context of the specific facts of this case. *Id.* at 522.

¶24.    Importantly, this case does not present this Court with a situation in which a defense witness has died or gone missing prior to trial, or in which the defendant is denied the opportunity to cross-examine a prosecution witness. On the contrary, Hollis testified at Newell's first trial, and Newell had the opportunity to fully cross-examine him on that occasion. In addition, Newell had a similar motive for developing Hollis's testimony during the first trial, because he pursued the same theory of self-defense at both trials. Newell does not explain how his cross-examination of Hollis would have differed between the two trials. We recognize Newell's argument that Hollis's absence may have caused some arguable prejudice to Newell's defense, because Hollis was the only eyewitness to the events directly leading to the shooting, and the jury at Newell's second trial did not have the opportunity to judge his credibility as he gave his testimony. But he offers no evidence as to whether

14

Hollis's testimony would have differed at the second trial had he been present. We find that any arguable prejudice caused by Hollis's absence did not affect Newell's ability to defend against his manslaughter charge in any substantial way.

### E. Balancing Test

¶25. Having analyzed the four factors set forth in *Barker*, we must "engage in a difficult and sensitive balancing process," keeping in mind that none of the above factors is a necessary or sufficient condition for a finding of a violation of the right to a speedy trial. *Id.* at 533. Balancing these factors with other relevant circumstances, we cannot reach the conclusion that Newell's right to a speedy trial was violated. While the total delay in this case was lengthy, the majority of the delay either was justified by good cause or was attributable to Newell's own actions. And while Newell eventually asserted his right to a speedy trial, he continued to take steps that were inconsistent with his claim that he was ready for trial. Finally, while Newell arguably suffered slight prejudice due to Hollis's unavailability at the second trial, this prejudice did not affect his primary theory of self-defense, which he was able to assert at both trials. Newell offers no other allegations of prejudice, and he cannot explain how his defense would have differed if Hollis, a prosecution witness, actually had been present at his second trial. Considering all of these circumstances, we find that Newell was not deprived of his right to a speedy trial.

### III. Whether the trial court erred in granting several jury instructions.

¶26. Newell argues that his second trial was prejudiced by several jury instructions which, according to him, provided contradictory and improper statements of the law and ultimately

15

misled the jury. The standard of review for the grant or denial of jury instructions is abuse of discretion. *McInnis v. State*, 61 So. 3d 872, 875 (Miss. 2011). "This Court reads jury instructions as a whole to determine whether the jury was fully and properly instructed according to the applicable law." *Clark v. State*, 40 So. 3d 531, 544 (Miss. 2010). "[I]f all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results." *Id.* (quoting *Davis v. State*, 18 So. 3d 842, 847 (Miss. 2009)). We address each of the challenged instructions separately.

### A. Instruction S-5A

¶27.    Newell claims that the trial court erred in granting Instruction S-5A, which instructed the jury to find Newell guilty of manslaughter if it found that Boyette withdrew as the initial aggressor and retreated, that Newell subsequently became the aggressor, and that Newell killed Boyette unnecessarily. Newell argues that this instruction lacks an evidentiary basis. We find this argument to be without merit. Hollis testified that he witnessed Boyette step away from Newell's vehicle with his hands in the air before the fatal shot was fired. Newell also told Investigator Sullivan that he had to jump back into his vehicle after shooting Boyette because it was rolling away, implying that he was leaving the scene when he decided to shoot Boyette. From this testimony, the jury reasonably could have inferred that Boyette withdrew from the encounter, and that Newell became the aggressor thereafter. While it is true that Hollis did not see the actual shooting, "all the proof need not be direct and the jury may draw any reasonable inferences from all the evidence in the case." *McLelland v. State*, 204 So. 2d 158 (Miss. 1967). The trial court did not err in giving Instruction S-5A.

16

### B. Instruction S-4

¶28. Newell also argues that the trial court erred in granting Instruction S-4, which provided, in pertinent part:

The Court instructs the Jury that if you find from the evidence in this case beyond a reasonable dobut that:

1. James C. Newell, Jr., on or about May 14, 2008, in Lowndes County, Mississippi;

2. did unnecessarily kill Adrian Boyette;

3. and not in self-defense;

4. while Adrian Boyette was engage [sic] in the perpetration of any crime or misdemeanor not amounting to a felony, or while Adrian Boyette was in the attempt to commit any crime or misdemeanor;

Then, you shall find the Defendant guilty of manslaughter.

At trial, Newell's attorney agreed that Instruction S-4 was a correct statement of the law but objected to it on the ground that it was inconsistent with Newell's self-defense theory. On appeal, he argues that Instruction S-4 is an incorrect statement of law because it does not present a cognizable theory of manslaughter. Because Newell did not object to Instruction S-4 at trial on the ground that it was an incorrect statement of law, he is procedurally barred from doing so on appeal. "A specific objection on a specific ground stated to the court does not warrant on appeal a reversal of a case on another and different ground of objection." *Stringer v. State*, 279 So. 2d 156, 158 (Miss. 1973).

¶29. Notwithstanding the procedural bar, this argument is without merit. While the State did not provide an explanation for its inclusion of Instruction S-4 at trial, Newell claims that

17

the instruction attempts to present the elements of manslaughter under Section 97-3-29 of the Mississippi Code, which provides:

> The killing of a human being without malice, by the act, procurement, or culpable negligence of another, while *such other* is engaged in the perpetration of any crime or misdemeanor not amounting to a felony, or in the attempt to commit any crime or misdemeanor, where such killing would be murder at common law, shall be manslaughter.

Miss. Code Ann. § 97-3-29 (Rev. 2014) (emphasis added). According to Newell, Instruction S-4 incorrectly identifies Boyette, rather than himself, as "such other" in this case, which erroneously allowed the jury to consider Boyette's unlawful activity as an element of Newell's manslaughter charge. We find this argument to be without merit. While it is true that Instruction S-4 uses similar language to Section 97-3-29, this Court has held under similar factual circumstances that a killing committed during a sudden fight also implicates Section 97-3-31. *See Wells v. State*, 305 So. 2d 333, 336-37 (Miss. 1974). Section 97-3-31 provides, "Every person who shall unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or to do any unlawful act, or after such attempt shall have failed, shall be guilty of manslaughter." Miss. Code Ann. § 97-3-31 (Rev. 2014). Instruction S-4 required the jury to find that Newell killed Boyette unnecessarily while Boyette was committing an unlawful act, which follows the language of Section 97-3-31. While Instruction S-4 refers only to misdemeanors, this Court has held that the phrase "unlawful act," as used in Section 97-3-31, includes any crime, including misdemeanors. *Cutrer v. State*, 207 Miss. 806, 814, 43 So. 2d 385 (1949) (quoting *Long v. State*, 52 Miss. 23, 40 (1876)). Instruction S-4 should have followed the language of Section 97-3-31 more closely in order to avoid any confusion with Section 97-3-29, but since both statutes apply

18

to the facts before us, we find that the instructions in this case "fairly, but not necessarily perfectly, announce the applicable rules of law[.]" ***Milano v. State***, 790 So. 2d 179, 184 (Miss. 2001).

### C. Instruction S-1

¶30.	Instruction S-1 is a general form-of-the-verdict instruction. Newell did not object to Instruction S-1 at trial, and he does not challenge the trial court's use of a general form of the verdict. Rather, Newell argues that the jury's verdict must be set aside because it may have been reached exclusively in reliance on Instruction S-4, an allegedly erroneous theory of guilt. It is true that where "a jury has been instructed that it may rely on any one of two or more independent grounds, and one of those grounds is insufficient, a subsequent general verdict of guilty must be set aside because the verdict may have rested exclusively on the insufficient ground." ***Phillips v. State***, 493 So. 2d 350, 355 (Miss. 1996) (citations omitted). However, because we have found that Instruction S-4 is not an incorrect statement of law, this argument is without merit.

### IV. Whether the trial court erred in allowing Newell's voice messages on his wife's phone to be admitted into evidence.

¶31.	Four hours before the incident in question, Newell called his wife and left the following voice message on her phone:

> See, that's exactly what I'm talking about. You won't let me touch the phone, but you let every other son-of-a-bitch touch the phone. I don't give a shit who you're fucking, you're still looking at the bigger and the better, though, ain't you? You're probably up at the Slab, or Double D's, or over at Tony's, but I bet you're at the Slab. And you want me to come up there so Mike will whoop my ass, but I'll tell you what I'm going to do. I'm fixing to come up there and pop a cap in your ass and his ass too.

19

In his initial appeal, Newell argued that this message was subject to spousal immunity and was not relevant to his murder charge. *Newell*, 49 So. 3d at 71-72. This Court rejected these arguments, but we made "no findings on their relevance or probative value in further proceedings." *Id.* at 72. At Newell's second trial, during the testimony of Investigator David Sullivan, the State moved to admit the voice mail into evidence again, arguing that it was probative of Newell's state of mind at the time of the killing. The trial court allowed the voice mail to be admitted over Newell's objection. Newell now argues that this message was not relevant to the issues presented in his second trial. Alternatively, he argues that the message's prejudicial effect substantially outweighed its probative value. He also claims that the message constituted inadmissible evidence of prior bad acts. We review the trial court's evidentiary rulings for an abuse of discretion. *Parvin v. State*, 113 So. 3d 1243, 1246 (Miss. 2013).

### A. Relevance

¶32. "'Relevant Evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Miss. R. Evid. 401. Our rule defining "relevant evidence" favors the admission of evidence with any probative value at all. ***Adcock v. Miss. Transp. Comm'n***, 981 So. 2d 942, 947 (Miss. 2008) (citing ***Holladay v. Holladay***, 776 So. 2d 662, 676 (Miss. 2000)). However, relevant evidence may be excluded in the trial court's discretion if the probative value of such evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by

20

considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Miss. R. Evid. 403.

¶33. We find that Newell's voice mail was relevant to the State's prosecution for manslaughter. In Newell's first appeal, we noted that "it is not disputed that Boyette was nonresponsive and hostile to Newell's questioning about Diane's infidelity. The message tends to support the State's theory that Newell acted with malice toward Boyette because Newell thought he was one of Diane's lovers." *Newell*, 49 So. 3d at 72. In the instant case, the same voice mail sheds light on Newell's state of mind and tends to make it more probable that Newell acted against Boyette in a "state of violent and uncontrollable rage engendered by a blow or certain other provocation given," which would support a conviction for heat-of-passion manslaughter. *Mullins v. State*, 493 So. 2d 971, 974 (Miss. 1986) (quoting *Black's Law Dictionary* 650 (5th ed. 1979) ("heat of passion")). In addition, the probative value of this evidence is not substantially outweighed by any prejudicial effect it may possess. This Court's duty in reviewing a trial court's decision concerning the relevance of evidence is "not to conduct its own de novo Rule 403 balancing, but simply determine whether the trial court abused its discretion in weighing the factors and in admitting or excluding the evidence." *Jones v. State*, 904 So. 2d 149, 152 (Miss. 2005) (citations omitted). The trial court did not abuse its discretion in finding that the voice message was relevant and admissible evidence.

### B. Evidence of Prior Bad Acts

¶34. Additionally, Newell complains that the voice mail represented inadmissible evidence of a prior bad act. We find this argument to be without merit. Mississippi Rule of Evidence 404(b) generally prohibits the admission of "[e]vidence of other crimes, wrongs, or bad acts

21

. . . to prove the character of a person in order to show that he acted in conformity therewith." Miss. R. Evid. 404(b). "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* Moreover, evidence of prior bad acts is admissible if the offense being tried and the prior act are "so interrelated as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences." *Neal v. State*, 451 So. 2d 743, 759 (Miss. 1984). "[W]hen dealing with closely related acts, the State 'has a legitimate interest in telling a rational and coherent story of what happened[.]" *Welde v. State*, 3 So. 3d 113, 117 (Miss. 2009) (quoting *Brown v. State*, 483 So. 2d 328, 329 (Miss. 1986)). In this case, Newell's voice mail was not admitted as evidence of his character for violence. Rather, it was presented to describe to the jury why Newell was at the Slab House on the night of the incident, and it explained the motive and intent behind his altercation with Boyette. Accordingly, the trial court did not abuse its discretion in admitting Newell's voice mail.

V. **Whether the trial court erred in admitting the transcript of Hollis's testimony from Newell's first trial.**

¶35. As previously mentioned, Jason Hollis was the only eyewitness to Newell's final interactions with Boyette before the fatal shooting. Hollis testified for the State at Newell's first trial, but the State was unable to locate him for the second trial. Over Newell's objections, the trial court granted the State's motion to admit into evidence a transcript of Hollis's prior testimony. On appeal, Newell argues that the trial court erred in admitting Hollis's prior testimony because his motives for developing Hollis's testimony at the first and second trials were not similar.

22

¶36.     Under the Mississippi Rules of Evidence governing hearsay, a declarant is considered an "unavailable witness" if he "is absent from the hearing and the proponent of his statement has been unable to procure his attendance . . . by process or other reasonable means[.]" Miss. R. Evid. 804(a)(5). If an unavailable witness gave testimony in a prior hearing or deposition in the same or another proceeding, that prior testimony is admissible "if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop by direct, cross, or redirect examination." Miss. R. Evid. 804(b)(1). Newell does not challenge the trial court's determination that Hollis was an unavailable witness. Additionally, it is undisputed that Newell had the opportunity to develop Hollis's testimony through cross-examination during his first trial. However, Newell argues that he did not have a similar motive to develop Hollis's testimony, as he was charged with murder in the first trial and only manslaughter in the second trial.

¶37.     We find that Newell's argument is without merit. Newell focuses on the fact that the State presented different theories of guilt at his first and second trials, but it is clear that Rule 804(b)(1) requires this Court to analyze *Newell's own motive* for developing Hollis's testimony. And while Newell defended against different charges in the first and second trials, his theory of defense remained essentially the same. Newell argued fiercely in both trials that he had killed Boyette in self-defense, specifically asserting the protections of the Castle Doctrine. As his attorney put it, "This was a life-or-death situation, kill or be killed." Therefore, it certainly was in Newell's interest to thoroughly cross-examine Hollis concerning his theory of self-defense during the first trial. Rule 804 does not require an

23

identical motive for developing prior testimony, but merely a "similar motive." *Id.* We find that the trial court did not err in admitting Hollis's prior testimony.

**CONCLUSION**

¶38. For the foregoing reasons, we affirm the judgment of the Court of Appeals, reverse Newell's conviction and sentence, and remand this case to the Lowndes County Circuit Court for a new trial.

¶39. **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR A NEW TRIAL.**

 **RANDOLPH, P.J., CHANDLER AND PIERCE, JJ., CONCUR. LAMAR, J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND KING, JJ.; COLEMAN, J., JOINS IN PART.**

 **DICKINSON, PRESIDING JUSTICE, DISSENTING:**

¶40. I believe it is no secret among the bench and bar that this Court has no interest in protecting the constitutional right to a speedy trial, or in enforcing speedy-trial law.[2] As I have stated before, this Court has an amazing propensity to fashion a new rule each time a defendant appears with a legitimate speedy-trial claim.[3] I call it this Court's "Whack-A-

---

[2] *See Myers v. State*, 145 So. 3d 1143, 1152 (Miss. 2014) (Dickinson, P.J., concurring in part and dissenting in part) ("If history teaches us anything, it is that this Court has little interest in a defendant's constitutional right to a speedy trial."); *Johnson v. State*, 68 So. 3d 1239, 1247 (Miss. 2011) (Dickinson, P.J., dissenting) ("[T]oday's final, fatal blow mercifully puts the criminal-defense bar out of its misery. Whereas previous decisions have been less than clear, today's plurality opinion is as subtle as a stick of dynamite—the Sixth-Amendment right to a speedy trial in Mississippi is dead.").

[3] *Taylor v. State*, 162 So. 3d 780, 790 (Miss. 2015) (Dickinson, P.J., dissenting) ("Today's majority provides an excellent analysis of this Court's opinions over the years, which seemingly have played Whack-A-Mole with the *Barker* factors. Every time a factor

Mole" jurisprudence.[4] For those who—regardless of the facts or law—support this Court's efforts to reject every speedy-trial claim, today's decision will not disappoint.

¶41. Time after time this Court has rejected speedy-trial claims because the defendant failed to show actual prejudice.[5] James Newell has done so. The only eyewitness went missing during the 607-day delay. But because Newell cross-examined that witness in a prior trial—on a different charge—the plurality finds insufficient prejudice. So the bar has been moved once again, a Mississippi defendant must now show extreme prejudice, and I must respectfully dissent.

**FACTS AND PROCEDURAL HISTORY**

¶42. Newell killed Adrian Boyette.[6] He was indicted for deliberate-design murder, but the jury chose the lesser-included offense of manslaughter.[7] He appealed, and we reversed his conviction and remanded for a new trial.[8] The mandate issued December 23, 2010, and, on remand, the circuit court set Newell's second trial for February 22, 2011.

---

pops up that appears to favor the defendant, this Court whacks it into conformity with the desire to affirm.").

[4] *Id.*

[5] *Johnson*, 68 So. 3d at 1246 (quoting *Stevens v. State*, 808 So. 2d 908, 918 (Miss. 2002)) ("'where the delay is neither intentional nor egregiously protracted, and there is an absence of actual prejudice to the defense, the balance is struck in favor of rejecting a speedy trial claim.'").

[6] *Newell v. State*, 49 So. 3d 66, 68–70 (Miss. 2010).

[7] *Id.*

[8] *Id.* at 78.

25

¶43.    But Newell was not provided the first trial's transcript, so the circuit judge reset the trial for May 16, and the assistant district attorney's scheduling conflict led to another delay to August 16.  The docket reflects that the August 16 trial date was reset, but the record does not give a reason, although the State has admitted that this continuance was granted because it was not prepared for trial.

¶44.    On September 2, Newell demanded a speedy trial.  On November 1, Newell moved for recusal because of statements the judge had made in the first prosecution.  Two days later, the circuit judge transferred the case to another judge for "judicial economy."  That same day, a trial date was set, but the record does not reflect the new date.

¶45.    On February 15, 2012, Newell moved to quash his indictment.  And on February 27, the circuit judge moved the trial to May 29 because "the Court was unable to resolve and the Defendant filed new dispositive motions that were not heard this term."  Between March 9 and April 19, Newell filed numerous *pro se* motions.  On May 14, the judge held a hearing on the motions.

¶46.    Then, on May 24, Newell moved to dismiss for failure to provide a speedy trial.  The State responded the next day.  And on May 29, the circuit judge denied the defendant's motion.  But when the parties appeared for trial that morning, the State announced for the first time that it intended to the use the transcript testimony of two witnesses, including the only eyewitness, and Newell requested a continuance, arguing that he intended to ask different questions on cross-examination.  The case then went to trial on August 21.

## ANALYSIS

26

¶47. The Sixth Amendment to the United States Constitution and Article 3, Section 26 of the Mississippi Constitution guarantee defendants a speedy trial.[9] This right applies on remand after we reverse a conviction on appeal.[10]

¶48. We review speedy-trial claims using the four-part test articulated by the United States Supreme Court in **Barker v. Wingo**.[11] Under the **Barker** test, we must balance four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) any prejudice the defendant suffered.[12] No one factor must exist to establish a speedy-trial violation, and the factors "must be considered together with such other circumstances as may be relevant."[13]

### The Length of the Delay

¶49. When we reverse a conviction and remand for a new trial, the speedy-trial clock starts when the mandate issues in the first appeal.[14] The mandate in Newell's appeal issued December 23, 2010. Trial occurred on August 21, 2012. So 607 days ran on the speedy-trial

---

[9] U.S. Const. amend. VI.; Miss. Const. art. 3, § 26.

[10] **Bailey v. State**, 78 So. 3d 308, 321 (Miss. 2012).

[11] **Id.** at 321 (citing **Barker v. Wingo**, 407 U.S. 514, 531, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972)).

[12] **Bailey**, 78 So. 3d at 321 (citing **Barker**, 407 U.S. at 530).

[13] **Barker**, 407 U.S. at 533.

[14] **Bailey**, 78 So. 3d at 321 (citing **Duplantis v. State**, 708 So. 2d 1327, 1334 (Miss. 1998)).

clock. "A delay of eight months or longer is presumptively prejudicial."[15] So this factor weighs in Newell's favor.

### *The Reason for the Delay*

¶50.     With a presumptively prejudicial delay, the State bears the burden to show good cause.[16] Absent good cause, any delay not attributable to Newell must weigh against the State.[17]

¶51.     The mandate issued December 23, 2010, and Newell's retrial was set for February 22, 2011. The United States Supreme Court has held that neutral delays, like those based on crowded dockets, weigh against the State because it bears the burden to bring the accused to trial.[18] If a neutral delay based on a crowded docket weighs against the State, so too must the delay between the mandate and the first available trial date. So the first sixty-one days weigh against the State.

¶52.     Then, trial was moved to May 16, 2011, because Newell was not provided the trial transcript. No evidence suggests that Newell caused the delay in obtaining the transcript or explains good cause for that delay. So this eighty-three-day period also must be counted against the State because it failed to provide evidence of good cause.

---

[15] *Bailey*, 78 So. 3d at 321 (citing *Smith v. State*, 550 So. 2d 406, 408 (Miss. 1989)).

[16] *Bailey*, 78 So. 3d at 321 (citing *Stevens*, 808 So. 2d at 916).

[17] *Bailey*, 78 So. 3d at 321 (quoting *Duplantis*, 708 So. 2d at 1335).

[18] *Barker*, 407 U.S. at 531 ("A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.").

¶53. Next, trial was continued to August 16, 2011, because the assistant district attorney had a scheduling conflict. Because the prosecutor's conflict caused this ninety-two-day delay, it weighs against the State.

¶54. The August 16 trial was continued at the State's request because it was not prepared. The State admitted that this delay extended to November 1, 2011, or seventy-seven days.

¶55. On November 1, Newell moved for recusal. The judge transferred the case two days later. A trial date was set that same day, but the record does not reflect the date set. On February 27, 2012, the new judge moved the trial to May 29, 2012, because Newell had filed several new motions. So this 210-day period weighs against Newell.

¶56. Finally, the parties appeared on May 29 for trial. At that time, the State announced its intent to use transcript testimony from two witnesses, including the only eyewitness. So Newell—having been blindsided by the State—then requested a continuance, and the judge reset the trial for August 21, when it occurred. I would weigh this eighty-four-day delay against the State because the State failed to disclose its intent to use transcripts until the morning of trial.

¶57. So, of the 607-day total delay, the State bears responsibility for 397 days, more than half the total delay. This portion, standing alone, far exceeds the presumptively prejudicial 270-day mark. So this factor weighs in Newell's favor as well.

### The Defendant's Assertion of His Right

29

¶58. "It is well settled that the State bears the burden of bringing a defendant to trial."[19] So failure to assert the right does not waive a speedy-trial claim.[20] That said, assertion weighs in the balancing test, and when the defendant asserts his right, it "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right."[21]

¶59. Further, demanding a speedy trial and a moving to dismiss on speedy-trial grounds are not the same thing.[22] Newell satisfied this dictate, demanding a speedy trial on September 2, 2011—before the presumptively prejudicial 270-day mark—and moving to dismiss on speedy-trial grounds May 24, 2012. Because Newell both demanded a speedy trial before the 270-day mark and moved to dismiss after he was denied a speedy trial, this factor weighs in his favor.[23]

### *Prejudice*

¶60. "Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect."[24] The United States Supreme Court "has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense

---

[19] **Bailey**, 78 So. 3d at 321 (citing **Stevens**, 808 So. 2d at 916).

[20] **Myers v. State**, 145 So. 3d 1143, 1151 (Miss. 2014) (citing **Barker**, 407 U.S. at 528).

[21] **Barker**, 407 U.S. at 531–32.

[22] **Perry v. State**, 637 So. 2d 871, 875 (Miss. 1994).

[23] **Barker**, 407 U.S. at 531–32.

[24] **Id.** at 532.

will be impaired."[25]   Actual prejudice to the defense at trial is the most serious.[26]   And the

***Barker*** court recognized that "[i]f witnesses die or disappear during a delay, the prejudice

is obvious."[27]

¶61.   During the first trial, the State used Jason Hollis's testimony.   He was the only

eyewitness to the shooting.   The State pursued a conviction for murder and Newell argued

that he killed in self-defense.   Hollis, the victim's friend, was important to the State's case.

Though he corroborated Newell's claim that the victim followed Newell to his truck and

attacked him, Hollis's testimony contained an important distinction from Newell's.   Hollis

testified that the victim stepped back from Newell with his hands in the air before Newell

shot him.

¶62.   In the second trial, the State—now seeking a manslaughter conviction—sought

Hollis's testimony once again.   But, during the delay, Hollis went missing.   So, on the

morning of trial, the State disclosed that it planned to use a transcript from the first trial.   As

the United States Supreme Court has said, where a witness "disappear[s] during a delay, the

prejudice is obvious."[28]

---

[25] ***Id.*** (citing ***United States v. Ewell***, 383 U.S. 116, 120, 86 S. Ct. 773, 776, 15 L. Ed. 2d 627 (1966); ***Smith v. Hooey***, 393 U.S. 374, 377–78, 89 S. Ct. 575, 576–77, 21 L. Ed. 2d 607 (1969); ***Klopfer v. North Carolina***, 386 U.S. 213, 221–22, 87 S. Ct. 988, 992–93, 18 L. Ed. 2d 1 (1967)).

[26] ***Barker***, 407 U.S. at 532.

[27] ***Id.***

[28] ***Id.***

¶63. Newell lost the opportunity to cross-examine Hollis, the State's key witness, in his second jury's presence, and his counsel explained that he intended to pursue a different line of cross-examination with Hollis in the second trial because he was now defending a manslaughter charge. So this factor must weigh against the State as well.

¶64. Because every *Barker* factor weighs in Newell's favor, I would find that his constitutional right to a speedy trial was violated. I dissent.

**KITCHENS AND KING, JJ., JOIN THIS OPINION. COLEMAN, J., JOINS THIS OPINION IN PART.**